Todd M. Friedman (216752)
Adrian R. Bacon (280332)
**Law Offices of Todd M. Friedman, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: (877) 206-4741
Fax: (866)633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiffs*,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED ZAKLIT AND JESSY ZAKLIT, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>NATIONSTAR MORTGAGE LLC and DOES 1 through 10, inclusive, and each of them,<br><br>          Defendants. | Case No. 5:15-CV-02190-CAS-KK<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(3)**<br><br>     **Date:  April 24, 2017**<br>     **Time:  10:00 A.M.**<br>     **Place:  Courtroom 8D**<br>     **Judge**: Hon. Christina A. Snyder |

## <u>Table of Contents</u>

I. INTRODUCTION ..............................................................................................1

II. LEGAL ARGUMENT ....................................................................................5

  A. Raffin v. Medicredit Is A Virtual Mirror Image Of The Case At Bar, And An Identical Result Should Be Reached ......................................................5

  B. Plaintiffs Tailor Their Class Definitions To Those Certified in *Raffin* .....11

  C. Maghen v. Quicken Loans Is An Unpublished And Non-Binding Merits Decision That is Distinguishable, Wrong On The Law, And Irrelevant To the Rule 23 Analysis .................................................................................13

  D. Plaintiffs Have Met All Standards Under Rule 23 ......................................15

    1. Plaintiff Presents Common Issues Of Fact And Law...............................15

      a. The District Court Cannot Make Merits Decisions In Determining Class Certification. ............................................................................15

      b. Individualized Issues do not Predominate .........................................15

        i. There Undoubtedly Is No Knowledge Or Consent Before The First Recorded Call, Thus The IPA 632.7 First Call Subclass Should Be Certified ......................................................................................15

        ii. Defendant's Recording Advisory Does Not Give Rise To An Inference Of Actual Or Implied Consent On Subsequent Calls, and Thus, The IPA 632.7 Class Should Be Certified ...................................18

        iii. Determining whether a borrower was in California is not an individualized issue .....................................................................20

        iii. Determining class-wide damages is not an individualized issue....20

      c. Mr. Borlin's Report Is Not Necessary For Purposes Of Certification, And Plaintiffs Does Not Need To Present A Feasible Methodology For Identifying Class Members Under Under Recent Binding Ninth Circuit Law....................................................................................................20

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**2. Plaintiff Presents Common Issues Of Fact And Law**................................**22**

**3. Plaintiffs Are Adequate And Typical Class Representatives**..................**22**

**4. Class Action Treatment Is Superior**..........................................................**25**

**III. CONCLUSION**.............................................................................................**25**

## **Table of Authorities**

**Cases**

*Abdeljalil v. General Elec. Capital Corp*., 306 F.R.D. 303, 306 (S.D. Cal. 2015) 11, 12

*Aboudi v. T-Mobile USA, Inc. Case No.* 12-CV-2169-BTM (S.D. Cal. 2015) ......... 12

*Ades v. Omni Hotels Management Corp*., 2014 WL 4627271 (C.D. Cal., Sept 8, 2014) ............................................................................................................passim

*Bates v. United Parcel Serv., Inc*., 511 F.3d 974 (9th Cir. 2007) ........................ 6, 24

*Benton v. Clarity Services, Inc*., 2017 WL 345583 (N.D. Cal. Jan. 24, 2017) .......... 2

*Bona Fide Conglomerate, Inc. v. SourceAmerica,* 2016 WL 3543699 (S.D. Cal. June 29, 2016) ...................................................................................................... 23

*Briseno v. ConAgra Foods, Inc*., 2017 WL 24618 (9th Cir., Jan. 3, 2017)............ 3, 21

*Dake v Receivables Performance Management,LLC*, Case No. 5:12-cv-01680-VAP-SP, 2013 WL 11332863 (C.D. Cal. April 16, 2013) ............................................ 17

*Ellis v. Costco Wholesale Corp*., 657 F.3d 970 (9th Cir. 2011)............................... 11

*Forcellati v. Hyland's, Inc*., 2014 WL 1410264 (C.D. Cal. April 9, 2014) ............. 15

*Friddle v. Epstein*, 16 Cal. App. 4th 1649 (1993) ................................................ 6, 16

*Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir. 1990).............................................. 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) ....................................... 22

*Horowitz v. GC Services Ltd. Partnership*, 2015 WL 1959377 (S.D. Cal. April 28, 2015) ................................................................................................................ 17

*In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)........ 19

*In re Nickelodeon Consumer Privacy Litig*., 2016 WL 3513782 (3d Cir. June 27, 2016) ................................................................................................................ 23

*Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95 (2006).................... 10, 13, 17

*Kight v. Cashcall*, 200 Cal. App. 4th 1377 (2011) ......................................... 8, 17, 19

*Kline v. Wolf*, 702 F.2d 400 (2d Cir.1983) ............................................................. 22

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir.1978)...................... 22

*Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141 (C.D. Cal. 2015)..13, 14, 15, 18

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....................6

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL
    4886933 (S.D. Cal. Sept. 15, 2016) ........................................................4

*O'Connor v. Oakhurst Dairy*, 2017 WL 957195 (1st Cir. March 13, 2017)...............9

*Polanco v. Schneider Nat. Carriers, Inc.,* 2012 WL 10717265 (C.D. Cal. Apr. 25,
    2012) ...............................................................................................5, 22

*Raffin v. Medicredit, Inc.* 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) ...........1, 5, 6

*Raffin v. Medicredit, Inc.*, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) .............passim

*Saulsberry v Meridian Financial Services, Inc.*, Case No. 2:14-cv-06256-JGB-JPR
    (C.D. Cal. April 14, 2016) ....................................................1, 5, 17, 21

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)..........................................6, 23

*Stemple v. QC Holdings, Inc.*, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ...............12

*Stern v DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014) ......................16

*Stockwell v. City & County of San Francisco*, 749 F.3d 1107 (9th Cir. 2014).........15

*Thomas v. FTS USA, LLC*, 2016 WL 3653878 (E.D. Va. June 30, 2016) ...............23

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016) ....................................10

*Ung v. Universal Acceptance Corp.,* 2016 WL 4132244 (D. Minn. Aug. 3, 2016) .23

*Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472 (S.D. Cal. 2013) ........................13

*Wolf v. Hewlett Packard Company*, 2016 WL 7743692 (C.D. Cal. Sept. 1, 2016)
    ...........................................................................................11, 13

*Wright et. al. Renzenberger, Inc.*, Case No. 14-55944 (9th Cir. July 21, 2016)...4, 15

**Statutes**
Invasion of Privacy Act, Cal. Pen. C. sec. 630 et seq.......................................passim

**Rules**
Fed. R. Civ. P. 23...................................................................................passim

**Constitutional Provisions**
U.S. Const. art. III.........................................................................1, 2, 6, 23

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION

After Plaintiffs Alfred and Jessey Zaklit filed their Motion for Class Certification on December 12, 2016, the Honorable Judge George H. King (ret.) granted class certification and denied a Motion to Dismiss for lack of Article III standing in a Penal Code § 632.7 class action that is virtually identical to the case at bar:  *Raffin v. Medicredit, Inc*., 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) (granting class certification); *Raffin v. Medicredit, Inc*. 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) (denying motion to dismiss).  These decisions should hold as the gold standard for analyzing class certification under Rule 23 in the context of a Penal Code § 632.7 class action against a debt collector whose common policy and practice is (just as is the case with Nationstar) to not issue a recording advisory to consumers until after gathering personal identifying information from them, i.e. not "at the outset" of the conversation.  This Honorable Court should follow the blueprint that was laid out in the *Saulsberry* case, and followed through in the *Raffin* matter.   Both of these decisions are consistent with This Honorable Court's class certification ruling in *Ades*.

Defendant's Opposition brief is an exercise in fighting the hypothetical of this incredibly straightforward case, and dodging the highly logical and common sense outcome in *Raffin v Medicredit*.  What is clear from its scattershot Opposition is that Defendant knows it is in trouble because the weight of authority in this District holds that the issue presented by Plaintiffs is common, and certifiable.  Defendant is throwing everything but the kitchen sink at Plaintiffs in the form of possible defenses hoping that something, *anything* will stick.  But Defendant's arguments can all be easily addressed by the common proof and common law that governs these important consumer privacy rights, as This Court, Judge Bernal, and Judge King carefully laid out in the aforementioned well-reasoned Orders.

Defendant cites almost exclusively to non-binding authority in support of its contrary (and incorrect) vision of what the IPA requires, and spends what seems like half of its brief arguing the merits of the law and damages issues rather than

demonstrating why certification of the class would be inappropriate.  Defendant's subsequent Rule 23 arguments regarding individualized consent are all premised on this incorrect view of the law, for which there is <u>no binding authority</u>.  Defendant also relies on the position that it had "implied consent" to record customers as a basis to challenge commonality and predominance.  But this fabrication of the defense bar has been rejected by numerous courts, including This Honorable Court in the *Ades* decision, as well as in *Raffin*.  Moreover, as Judge King observed in *Raffin*, whether there is implied consent would be a common merits issue that can be addressed after certification in a summary judgment motion.[1]  The class definition can be easily tailored, as in *Raffin*, to avoid individualized issues entirely, to the extent they exist.

Nationstar (similarly to defendant in *Raffin*) makes an Article III standing argument, which fails for three reasons.  First, a class certification opposition is not the procedurally correct method of requesting affirmative relief from a court.  Second, IPA claims necessarily involve privacy rights, which are substantive rights that give rise to Article III standing.  Finally, as the Ninth Circuit has held, class actions satisfy Article III where a single named plaintiff alleges sufficient facts to show standing.[2]

Defendant next spends a great deal of effort engaging in a battle of the experts, attempting to cast Mr. Borlin as inadequate.  However, it bears mention that Mr.

---

[1] Nationstar's reliance on a notification in the fine print of the back of its billing statements is a red herring as well.  The disclaimer it points to clearly relates to <u>customer service</u> calls that a consumer would place <u>to Nationstar</u> at the number provided.  It says nothing about calls that Nationstar would make to a consumer from its debt collection department being recorded.  The class definition expressly excludes inbound calls to Nationstar from consumers.  It also does not relate to customer service calls, only debt collection calls (the only outbound calls that Defendant places and records).  This evidence is completely irrelevant, and Defendant's heavy reliance on it borders on frivolous.  Moreover, this too is a merits issue.

[2] Even if the Honorable Court were persuaded that there is no standing, the appropriate action would be to remand the case to state court, not deny class certification.  *Benton v. Clarity Services, Inc*., 2017 WL 345583 (N.D. Cal. Jan. 24, 2017).

Borlin's testimony was not instrumental to certification in *Raffin*, and is not instrumental here, because his testimony speaks only to the issue of "feasible methodology" as a fallback position to a class definition that will not be the ultimate class that is certified by This Honorable Court if it follows the *Raffin* reasoning. Furthermore, prevailing and binding Ninth Circuit authority holds that plaintiffs not only do not have to identify class members to meet their burden under Rule 23, but also <u>do not even have to present a feasible methodology for doing so</u>, as manageability issues are best reserved post-certification.  See *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017).[3]  Defendant's heightened focus on Mr. Borlin demonstrates that it is attempting to sidestep a straightforward Rule 23 analysis, rewrite Plaintiffs' class certification theory to overly complicate the matter, and jump the gun by prematurely focusing on post-certification damages and merits issues.[4]  Defendant's battle of the experts will have its day in court, but it is not this day.[5]

_____

[3] Defendant's arguments regarding how challenging and time consuming it will be to physically download recordings is a red herring because recordings do not need to be reviewed at all in this case, since it was Defendant's standard policy and practice to violate § 632.7 by not issuing a recording advisory at the outset of <u>any of its calls</u>. Moreover, even if a review of the recordings were necessary, it is premature. Plaintiffs should be given the opportunity analyze the system via a site inspection. Defendant's position that it would take five minutes to download a single 30 second .wav file from Verint demonstrates only that its witnesses are unsophisticated in database management.  Data can always be pulled in batches by running targeted queries.  Mr. Hansen is an expert in database systems with 20 years of experience working with such systems.  This is clearly a post-certification manageability issue. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1127-28 (9th Cir. 2017).

[4] Mr. Borlin and Veritone both signed the Protective Order.  Defendant's arguments that there was a breach of confidentiality are misplaced.  Bacon Decl. Ex A.

[5] Defendant did not disclose its expert prior to filing its Opposition to class certification.  Plaintiffs did not have sufficient time prior to the filing of this Reply to depose and conduct discovery on Defendant's expert, despite the fact that Plaintiffs accommodated Defendant's requests to depose and conduct discovery on all three of their experts by numerously stipulating to extend Defendant's Opposition deadline. Defendants had four months to engage in discovery of Plaintiffs' experts.  Plaintiffs

Finally, Defendant's statements about damages issues and its potential liability being grossly excessive strongly signifies that Defendant is acknowledging common and prevalent violations of the IPA based on its <u>common scripts and policy of following them</u>. Defendant intends on arguing merits issues and appealing to the emotional sensibilities of the tribunal in order to evade certification. But this is completely inappropriate, as the Ninth Circuit recently held in *Wright et. al. Renzenberger, Inc.*, Case No. 14-55944 (9th Cir. July 21, 2016). Nationstar, a mortgage servicing conglomerate which oversees roughly $500 billion in loans, is turning for empathy where none is due.

What should be remembered throughout the Honorable Court's consideration of Plaintiffs' Motion is the basic premise of Plaintiffs' IPA claim, stems from Defendant's employment of a standard non-compliant policy and procedure, which has caused a mass invasion of privacy for the proposed classes:

> Defendant records each and every outbound call with any consumer, yet, does not inform them that they are being recorded at the outset of the calls, and instead only informs them of such (sometimes) after gathering confidential personal and private information.

These sizable gaps in Defendant's standard policies and practices resulted in Defendant recording Plaintiffs (and nearly seventy thousand other Californians) without knowledge or consent, which is the operative legal test in dispute. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Defendant makes numerous arguments about individualized issues surrounding knowledge and consent, but in fact provides no evidence whatsoever of any of the individualized issues that it claims will predominate the topic. Conjecture cannot serve as a basis to deny class certification, especially when faced with a common, non-compliant policy.

---

had less than two weeks. This should be taken into account if the Court is inclined to give any credence to Defendant's expert's testimony.

Consent is simply not an individualized issue.[6]  Just as in *Raffin*, Nationstar's common written policy and practice, its standardized scripts, its Rule 30(b)(6) witness, and all of the recordings that were produced in its sample, demonstrate conclusively that its practice, in all cases, was not to tell anyone it called that it was recording them, unless or until after they gathered personal identifying information from the consumer.[7]  *Raffin, Saulsberry* and *Ades* tell us that this very set of facts presents a certifiable issue.  To rule differently in this matter would be to go against the weight of recent authority.  Nationstar has presented no convincing reason to take such an extreme departure from these decisions.  The class should be certified.

## II.   LEGAL ARGUMENT

### A. Raffin v. Medicredit Is A Virtual Mirror Image Of The Case At Bar, And An Identical Result Should Be Reached

After Plaintiffs filed their Motion for Class Certification on December 12, 2016, two landmark decisions were issued by Hon Judge George H. King in the matter of *Sheena Raffin v Medicredit, Inc., et. al.* Case No. 2:15-cv-04912-MWF-PJW.[8]  Like the case at bar, *Raffin* involves a Penal Code § 632.7 class action against a debt collector, which was calling consumers on their cell phones to collect on their accounts, and recording the conversations it held with consumers without their knowledge or consent.  Like the case at bar, *Raffin* involves a scenario where standardized scripts, written policies and testimony of the Rule 30(b)(6) witness all corroborated a common policy and practice whereby the defendant does not issue a recording advisory at the outset of the conversation, but instead only does so after

---

[6] Defendant's position regarding consumers who received the calls while outside California relies on principles rejected in *Ades v. Omni Hotels Management Corp.*, 2014 WL 4627271, *6-8 (C.D. Cal., Sept 8, 2014), as well as *Raffin*.

[7] Defendant mischaracterizes Plaintiffs' testimony regarding their understanding of the case, and points out that Mr. Zaklit has filed a couple of class action cases in the past.  The Court should view this argument with a skeptical eye because Defendant's line of argument clearly does not arise from any genuine concern for Class Members.

[8] The case was transferred to Judge Fitzgerald after Judge King retired.

gathering personal identifying information from the consumer and verifying that they are the debtor with whom they are attempting to discuss the account.  And like Plaintiffs in the case at bar, Ms. Raffin was one such consumer who was contacted in such a manner on her cell phone, and whose voice was recorded without her being advised at the outset of the call that she was being recorded.

The first decision, *Raffin v. Medicredit, Inc*. 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016), denied defendant's motion to dismiss for lack of Article III standing.  Like the case at bar, defendants contended that plaintiff lacked Article III standing, because she had asserted a bare procedural violation of a statute, and lacked actual injury.  The court reviewed applicable law on the topic, including *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007), *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Matera v. Google Inc*., 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016), concluding that a "violation of someone's right to privacy is not just a 'bare procedural violation,' *Spokeo*, 136 S. Ct. at 1549; it is 'an affront to human dignity,' *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993)."  *Raffin v. Medicredit, Inc*. 2016 WL 7743504 at *3 (C.D. Cal. Dec. 19, 2016).  Nationstar has similarly engaged in identical conduct as Medicredit, conduct which is likewise "an affront to human dignity."  *Id*.  It is through this lens that class certification, and the case as a whole should be analyzed.

The second decision, *Raffin v. Medicredit, Inc*., 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) granted plaintiff's motion for class certification.  The facts of the case, and the theory upon which class certification was based were <u>virtually identical</u> to the case at bar.  Just like in this case, in *Raffin*, the essence of the claim was that the defendant violated § 632.7 by recording phone conversations without first obtaining consent.  The class involved one single and predominating question of law that could be determined in one stroke: does the CIPA require that a California consumer be advised that he or she is being recorded at the outset of a debt collection call?  *Id*. at *5.  The court observed that there was sufficient evidence of a common policy and practice, because, just like Nationstar, Medicredit relied on collections agents to

verbally issue a scripted advisory to customers when it called their phones.  These scripts instructed agents not to "inform the other party to the call that the call was being recorded until at least identifying that party" i.e. by gathering personal identifying information.  *Id*.  Coming to this conclusion, the court reviewed standard scripts, written policies, and testimony of defendant's Rule 30(b)(6) witness.[9]

The primary dispute at certification, as is the case here with Nationstar, was whether individualized issues of actual and implied consent predominate.  Medicredit made the same arguments that Nationstar makes: it is impossible to determine whether someone with a California area code was present in California at the time they were recorded;[10] that individualized issues of consent predominate, and that plaintiff's methodology for identifying class members was not feasible.  Ultimately, the court found these issues insignificant and contrary to both common sense and the evidence of the case, and ruled that predominance was satisfied, certifying the class action.

There are two key factual distinctions between the case at bar and *Raffin*, which make this case even more fit for class certification than *Raffin*.

First, the recording advisory in *Raffin* per the standardized scripts stated "*all* calls may be monitored and/or recorded" (*Id*. at *7 emphasis in original), while the recording advisory in the case at bar uses the phrase "*This* call may be recorded for

---

[9] Raffin submitted declarations from Borlin, Hansen and Mullins that largely mirrored the declarations in the case at bar.  Medicredit submitted a rebuttal expert declaration.  Both parties objected.  The court determined that it did not need to rely on the expert declarations to rule on whether Rule 23 had been satisfied.  *Id*. at *3 n 3.

[10] Judge King followed This Honorable Court's ruling in *Ades v. Omni Hotels Mgmt. Corp*., 2014 WL 4627271, at *7 (C.D. Cal. Sept. 8, 2014) in holding: "We think it more likely than not that a person with a California area code will have been located in California at the time of the call. In any case, just because cell site location may be difficult to obtain does not mean that it cannot be obtained.  Raffin has identified objective criteria that will allow class members to identify themselves.  If Medicredit believes that a putative class member was outside California during a call, it can offer evidence to disqualify the member." *Raffin v. Medicredit, Inc*., 2017 WL 131745 at *3 (C.D. Cal. Jan. 3, 2017).

quality assurance purposes" (emphasis added).  This is important because of the holding in *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011).  There, the California Court of Appeal reasoned that hearing an automated disclosure once "would not necessarily inform a borrower that this call and all future calls" may be monitored or recorded.  *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011). Stated otherwise, merely because a person is told during one call that they are being recorded does not mean they have reason to assume they are recorded in future calls. The *Raffin* case gave rise to such an inference, because agents directly told consumers that "all calls" would be recorded, but that presumption of implied consent to subsequent calls is not present for Nationstar borrowers.

To address this issue, the *Raffin* Court tailored the class definition that was ultimately certified, to avoid the issue of implied consent in subsequent calls entirely:

> "Even if Raffin's understanding of the law is correct, Medicredit did not necessarily violate § 632.7 because a class member may have consented to being recorded prior to a call that took place within the proposed Class Period. Indeed, Medicredit submits reports showing that, in some circumstances, it has frequent contact with the debtors it calls. (See Dkt. 53, Exs. E-G.) And Medicredit's scripts direct collections agents to warn that *all* calls may be monitored and/or recorded. (See Dkt. 46, Ex. B.) Whether and when a recording advisory was provided on a call will not necessarily determine whether consent was given if consent is either expressly or impliedly provided through prior calls. We would have to examine whether a class member had previously received a call and under what circumstances. Such a task would generate individualized inquiries that would predominate over common questions, making class certification inappropriate.
>
> However, assuming Raffin's understanding of the law is correct, this problem can be cured by narrowing the class definition to include only those claims relating to an individual's first recorded conversation with a Medicredit representative. By doing so, Raffin's proposed question will generate common answers because every such individual was exposed to Medicredit's uniform policy of recording a conversation without first informing the individual that the conversation was being recorded. Accordingly, we narrow the class definition to claims relating

8

to an individual's first recorded call with a Medicredit representative."
*Id*. at *7.  These issues are not present in the case at bar, for the simple reason that the language spoken to borrowers by Nationstar would not put them on notice that future calls would be recorded, as the advisory in Raffin arguably may have done.[11]

*Raffin* is distinguishable in one other critical respect.  Ms. Raffin was given no recording advisory at all during her call with Medicredit, because in the case of her particular call, the call was ended before the parties got to the point in the script where a mini-miranda would have been issued.  Medicredit argued that this presented a typicality issue, as well as a predominance issue, because Raffin's call clearly violated the IPA since there was no recording advisory whatsoever, whereas Medicredit contended that calls (like the Zaklit's, where an advisory *was* given after gathering personal identifying information) would not violate the IPA.  The court addressed this issuing a merits determination that both types of calls violate § 632.7, putting to rest any dispute as to there being relevant liability distinctions between each type of call.  The court began the analysis by observing that both § 632 and § 632.7 contained the same "without consent language."  *Id*. at * 7.   The court went on to analyze the meaning of § 632.7 by reviewing the Supreme Court's interpretation of § 632:

> "[T]his provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, that is, from recording the conversation *without first informing* all parties to the conversation that the conversation is being recorded. If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to

---

[11] Language is important, and this key difference in word choice matters.  The First Circuit just decided the merits of a class action alleging overtime misclassification of a job position under Maine employment law based on the omission of an Oxford comma from the language of a statute.  *O'Connor v. Oakhurst Dairy*, 2017 WL 957195 (1st Cir. March 13, 2017).  Surely the difference between "all calls" and "this call" is even more pertinent, as it could mean the difference between class-wide damages of $336,530,000 vs. $890,390,000. Kemp Decl., Ex. C, ¶¶ 52-53.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

continue the communication. A business that adequately advises all parties to a telephone call, *at the outset of the conversation*, of its intent to record the call would not violate the provision."

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117-18 (2006) (emphasis added).   Judge King interpreted § 632.7 in the only possible way that these two emphasized (and binding) phrases could be reasonably harmonized:[12]

> "We take this passage to mean that § 632.7 prohibits recording of a conversation prior to informing the parties to the conversation that the conversation is being recorded. In other words, to obtain a party's consent to record, a recording advisory must be given before the party's communication is recorded.…
>
> The most reasonable way to harmonize the phrases "without first informing" and "at the outset" is to conclude that the "outset" is prior to any recording of the plaintiff's communication. See also *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661 (1993) (discussing § 632 and noting that "[p]laintiff invaded defendants' privacy and violated the privacy act at the moment he began making his secret recording. No subsequent action or inaction is of consequence to this conclusion." (emphasis added)). This interpretation is also consistent with the dictionary definition of "outset," which means "beginning" or "start." Merriam-Webster's Collegiate Dictionary 826 (10th ed. 1998). Therefore, at the start of a conversation, before any recording of another party's communication has taken place, that party must be informed that the conversation is being recorded…
>
> Medicredit's recording policy did not comply with this requirement. Because every putative class member was subject to this policy on a uniform basis, determining consent to record can be accomplished without resort to individualized proof. On the record before us, Raffin has met her burden of showing that common questions will predominate at trial."

*Raffin v. Medicredit, Inc.*, 2017 WL 131745 at *7-9 (C.D. Cal. Jan. 3, 2017).

This presents a critical distinction from the case at bar, because here, there is no

---

[12] Citing *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) ("When the state's highest court has not squarely addressed an issue, we must predict how the highest state court would decide the issue...." (internal quotation marks omitted)).

typicality issue regarding Plaintiffs' calls being different from any of the class members with respect to whether a recording advisory needs to be given at the "outset" of a conversation.[13]   If Defendant's recordings of Plaintiffs' phone calls violate the IPA, then the recordings of the rest of the proposed class members violate the IPA as well.  Because of this distinction, the merits issue that *Raffin* decided need not be decided by the Court now.[14]  It can be reserved for summary judgment.[15]

## B. Plaintiffs Tailor Their Class Definitions To Those Certified in *Raffin*[16]

*Raffin* significantly clarified how Penal Code § 632.7 class actions should be analyzed under Rule 23, in relationship to a defendant whose common policy and practice is to not issue timely recording advisories at the outset of its conversations with debtors.  As the Parties and the Honorable Court now have the benefit of Judge King's well-reasoned Order in *Raffin*, Plaintiffs proffer two revised class definitions for the Honorable Court's consideration.[17]

_____

[13] There is zero evidence in the record of this case to suggest that even a single class member was told that they were being recorded at the outset of any recorded conversations for outbound calls, under the legal definition of "outset" advanced in *Raffin*.  Defendant cannot get around this fact.  All it can do is raise other forms of irrelevant individualized issues that have been rejected by This Court in *Ades* and also in both *Saulsberry* and *Raffin,* or separately argue that Judge King got it wrong on the substantive law (a merits issue).

[14] Courts are only to consider merits questions to the extent they overlap with Rule 23 requirements.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  No such overlap exists here.

[15] Of course, if the Honorable Court believes otherwise, Plaintiffs would respectfully request that the Court follow the merits ruling of *Raffin*, which is the correct legal holding as to the requirements under § 632.7 and the only way to harmonize the language of the statute with existing binding precedent governing the CIPA.

[16] This tailoring fully addresses any and all arguments raised by Defendant pertaining to the class definition being a fail-safe class, or being arbitrary.

[17] Narrowing a class definition at the certification stage is accepted as proper by courts, and routinely is required to meet evolving Rule 23 standards.  *See Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015); *Wolf v. Hewlett Packard Company*, 2016 WL 7743692 at *8 ft. 4 (C.D. Cal. Sept. 1, 2016);

IPA 632.7 Class:

> All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated in an outbound[18] telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

IPA 632.7 First Call Subclass:

> All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated for the first time in an outbound telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

Plaintiffs are already in possession of information necessary to identify class members, and has crafted a narrowly tailored class definition that is comprehensive of the individuals who were subjected to Defendant's allegedly unlawful IPA policies during the applicable class period. Plaintiffs have demonstrated a methodology for providing notice to the Class and ascertaining their whereabouts and identities. These identities are in the possession of Defendant, whose account notes reveal the names, social security numbers, addresses and phone numbers of the people it recorded.[19] Plaintiffs leave it to the sound discretion of the Honorable Court as to whether

_____

*Raffin v. Medicredit, Inc.*, 2017 WL 131745 at *7-9 (C.D. Cal. Jan. 3, 2017).

[18] "Outbound" is defined as calls placed outbound from Defendant to Class Members.

[19] Defendant incorrectly conflates manageability issues relating to providing notice with ascertainability issues. Plaintiffs' counsel has used these methods in numerous consumer class actions that have been administered without any trouble, including these cases. *See Aboudi v. T-Mobile USA, Inc. Case No.* 12-CV-2169-BTM (S.D. Cal. 2015); *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (granting certification, finding class ascertainable despite similar over-inclusiveness arguments raised by Defendant, and employing similar reverse lookup methods for sending notice to the class); *Stemple v. QC Holdings, Inc.*, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) (same).

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

certification is appropriate for the proposed Class, Subclass, or both.[20]

### C. Maghen v. Quicken Loans Is An Unpublished And Non-Binding Merits Decision That is Distinguishable, Wrong On The Law, And Irrelevant To the Rule 23 Analysis

To counter *Raffin*, Defendant relies heavily on the recent case of *Maghen v. Quicken Loans Inc.*, 2017 WL 711088 (9th Cir. Feb. 23, 2017)[21] for the position that Judge King was wrong in his interpretation of the phrase "at the outset," and uses this as a basis to oppose class certification. Defendant's heavily reliance on this unpublished decision is misplaced for several reasons.

First and foremost, *Maghen* is distinguishable on its facts. *Maghen* involves solicitation calls, not debt collection calls. Calls of the nature Defendant was making to class members, by its own standardized scripts, involves the discussion of sensitive personal information at the very beginning of the conversation, including name, date of birth, address, and social security number. This exchange occurs before a class member is told that they were being recorded, in each and every call that falls under the purview of the class definitions above. *Maghen* did not analyze what occurred during the conversation, nor analyze what sort of conduct would constitute the "outset" of a conversation. The Order also does not address the nuances of *Kearney*, and its holding that the IPA prohibits the recording of any conversation "without first

---

[20] Even if the Honorable Court is persuaded by Defendant's arguments regarding individualized issues of consent, all Defendant succeeds in doing is narrowing the damages to one violation per class member (i.e. their first recorded call). The appropriate thing to do under such circumstances would be to tailor the class definition, not deny certification outright. "[Defendant] has a point here, but it can be addressed by simply modifying the class definition as opposed to denying class certification outright." *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485-90 (S.D. Cal. 2013). *See also Wolf v. Hewlett Packard Company*, 2016 WL 7743692 ( C.D. Cal. Sept. 1, 2016) (Hon. Judge O'Connell presiding, tailoring the class definition from nationwide claims to California state claims, and tailoring all purchases of class products to brick and mortar purchases), and *Raffin v. Medicredit, Inc.*, 2017 WL 131745 at *7-9 (C.D. Cal. Jan. 3, 2017).

[21] Both *Raffin* and *Maghen* are Plaintiffs' counsel's cases.

13

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

informing all parties to the conversation that the conversation is being recorded."  In that respect, Judge King's Order in *Raffin* provides a much more robust and compelling review of the law surrounding these issues, one which is much more likely to be the result that the California Supreme Court would reach on the issue.

Perhaps most different of all from this case is that the plaintiff in *Maghen* agreed to a set of terms and conditions, which expressly disclosed that all calls were recorded. Specifically, those terms stated: "By submitting your contact request for a loan product, you are consenting to be contacted by one or more lenders which may include any one of our over 200 Network lenders ... who may [contact you] either by telephone (on a recorded line), email or mail."  *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1142 (C.D. Cal. 2015).  It was undisputed that Maghen agreed to these terms. This was the primary focus of the Order, with the discussion of the term "at the outset" being largely superfluous dicta.  There are no terms and conditions that the Zaklits, or any members of the proposed Class and Subclass were ever provided with or agreed to, which disclosed that Nationstar would contact Class Members on a recorded line. This fact is nowhere in the record.  And yet it is the lynchpin of the *Maghen* decision.

Secondly, *Maghen* is an unpublished decision, and therefore is not binding on this Court.  Ninth Circuit Rule 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent").  Indeed, Medicredit petitioned for it to be published, but its request was denied.  See *Maghen v. Quicken Loans Inc.*, Case No. 15-55684 (9th Cir.) Dkt. No. 50 (March 16, 2017).  Because *Maghen* is non-binding, it would not be in error for the District Court to ignore the decision entirely in coming to a class certification decision.  Moreover, comparing *Maghen* to *Raffin* as equals from a precedential/persuasive authority standpoint, it is abundantly clear that *Raffin* is more factually analogous, and proffers a much more robust and compelling discussion of the requirements under § 632.7, that a debt collector must advise a consumer "at the outset" of a call that they are being recorded, before doing so.

Thirdly, *Maghen* is a merits decision, which for reasons discussed below is not

appropriate for consideration on class certification, unless it is necessary to determine issues pertinent to Rule 23.  Doing so is not necessary in the case at bar, due to the distinction between this case and the *Raffin* matter, where determining the legal application of "at the outset" was only required to avoid typicality issues.  *Maghen* can, and frankly should be ignored entirely by This Honorable Court.

### D. Plaintiffs Have Met All Standards Under Rule 23

#### 1. Plaintiffs Present Common Issues Of Fact And Law

##### a. The District Court Cannot Make Merits Decisions In Determining Class Certification.

Defendant's entire challenge to commonality and predominance is guilty of the classical mistake of fighting the hypothetical.  As the Ninth Circuit recently observed in a decision overturning a district court's denial of class certification, "[w]hether Renzenberger's policies complied with the law was a common question, whatever its merits." *Wright et. al. Renzenberger, Inc.* Case No. 14-55944 at * 3 (9th Cir. July 21, 2016) (citing *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1113- 14 (9th Cir. 2014)).  Defendant clearly disagrees with Plaintiffs' view of the law, and cites heavily to *Maghen* as authority.  There is a proper place for Defendant's arguments: a summary judgment motion.  Defendant's heavy reliance on *Maghen* belies its opposition to certification.  "Such an argument that challenges the merits of Plaintiffs' allegation…has no bearing on the Rule 23 predominance inquiry." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 (C.D. Cal. April 9, 2014).

#### b. Individualized Issues do not Predominate

##### i. There Undoubtedly Is No Knowledge Or Consent Before The First Recorded Call, Thus The IPA 632.7 First Call Subclass Should Be Certified

As Defendant acknowledges in its brief, the source of Defendant's argument that there may be individualized issues of knowledge or consent derives wholly from the concept that a borrower would somehow be "informed the call may be recorded from some other sources [than the late scripted advisory]." *See* Opposition at 9:20-

10:3 (citing *Weiner v. ARS Nat. Servc., Inc.,* 887 F.Supp.2d 1029, 1033 n.3 (S.D. Cal., 2012)).[22]  Putting aside whether Defendant actually makes a compelling argument that such circumstances arise in *subsequent* calls (it doesn't, as addressed separately), if the Honorable Court agrees with Defendant that telling a consumer that the call may be monitored or recorded puts consumers on reasonable notice that future calls may likewise be recorded, all Defendant succeeds in doing is narrowing the damages to one violation per class member (i.e. their first call).  <u>The appropriate thing to do under such circumstances would be to tailor the class definition, not deny certification outright</u>, as described above, and as was done in *Raffin*.  Just as in *Raffin*, Plaintiffs have tailored the IPA 632.7 First Call Subclass in a manner to avoid any individualized issues whatsoever, if the Honorable Court perceives this to be an issue. In fact, the class definition is taken verbatim from *Raffin*, for this very purpose.

Defendant has presented no evidence to support the notion that individual issues defeat certification.  Conversely, Plaintiffs have presented the Court with a written policy and practice, which is supported by the testimony of Defendant's 30(b)(6) witness, and corroborated by standard scripts used throughout the class period, and copies of recordings of the practice in action, all of which suggest Defendant was violating the privacy rights of thousands of people in the same way. This case is highly reminiscent of *Stern v DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014).  There, Defendant argued that individualized issues of consent in a

---

[22] Consent and/or knowledge (either actual or implied) must exist before a recording takes place, or else the IPA has been violated.  Acts that take place subsequent to an IPA violation cannot cure or ameliorate a violation.  *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661 (1993) ("[p]laintiff invaded defendants' privacy and violated the privacy act at the moment he began making his secret recording. No subsequent action or inaction is of consequence to this conclusion.")  Thus, determining how a borrower reacted to being told they were being recorded is irrelevant.  The question is not whether they were offended and made a big commotion after they learned that their rights were violated.  The question is whether there was a violation.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

TCPA class action would defeat certification, but presented no actual evidence supporting this notion. *Id*. at *3. Judge Guilford was unpersuaded, noting the absence of evidence, and certified the class. *Id*.[23]   The lesson from these decisions is that mere conjecture cannot serve as the basis for denying class certification.   The evidence on the record in this case demonstrates that the issues are common.

Defendant has only two fallback positions. The first is that implied consent can be inferred under the "service monitoring: or "service observing" exemption, by the very act of receiving such a call, an argument it makes by citing to the *Torres v Nutrisystem* matter. However, This Honorable Court expressly rejected that argument in *Ades*, relying instead on the *Kearney* case as applicable, which criticized that line of reasoning. *Steven Ades & Hart Woolery v. Omni Hotels Management Corp*., 2014 WL 4627271 at *11-12 (C.D. Cal. Sept. 8, 2014).[24]

Defendant's second fallback position, which it strangely makes a highlight of its Opposition despite never addressing these documents previously in depositions or discovery, is the language that it places on the back of its billing statements in the fine print.  This is what Defendant raises as its supposed saving grace:

 **Customer Service:**1-888-480-2432, Monday through Thursday 8 am – 8 pm, CT, Friday 8 am – 6 pm CT, and Saturday 8 am – 2 pm CT [Calls may be monitored and/or records for quality assurance purposes]

---

[23] Defendant argued the same thing in *Saulsberry*, but Judge Bernal properly held, when faced with a common policy and no evidence of individual issues, the policy trumped, necessitating and finding of commonality and predominance.  *See Saulsberry v Meridian Financial Services, Inc.*, Case No. 2:14-cv-06256-JGB-JPR (C.D. Cal. April 14, 2016) (Dkt. No. 48) at *13 and 20.  This Court has ruled in exactly the same manner.  *Ades v. Omni Hotels Management Corp*., 2014 WL 4627271, at *12-13 (C.D. Cal., Sept 8, 2014).

[24] See also *Dake v Receivables Performance Management, LLC*, Case No. 5:12-cv-01680-VAP-SP, 2013 WL 11332863 (C.D. Cal. April 16, 2013); *Horowitz v. GC Services Ltd. Partnership*, 2015 WL 1959377 (S.D. Cal. April 28, 2015), *Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 2015 WL 1346110, (S.D. Cal. March 24, 2015); *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011) (reasoning that hearing an automated disclosure once "would not necessarily inform a borrower that this call and all future calls" may be monitored.)

17

(Dkt. No. 54-10 ¶¶ 9-10 and 54-11 Exs. A-C.).  First and foremost, this is not language that was expressly agreed to in a contract or a set of terms and conditions, like that in *Maghen*.  Even if the Court were persuaded by *Maghen*, the cases are not analogous, because this is simply fine print written on the back of a monthly bill.  There is no privity at issue like in *Maghen*.  Second, this fine print language clearly indicates that *customer service calls* made by customers *to Nationstar* may be recorded.  This does not put a consumer on notice that they will be recorded *when Nationstar calls them to collect on their debt*.  Again, language is important.  It would be quite a stretch to interpret this language the way Defendant is asking the Honorable Court to do.  Finally, and most important for purposes of the Rule 23 analysis, is the fact that Defendant's position is that it sends this "disclosure" to customers in their billing statements.  Logically, Nationstar's customers would have had to receive a monthly statement before they received a call from Defendant collecting on said monthly statement.  *Ergo*, the question of whether this "disclosure" provides reasonable advanced notice to consumers that they will be recorded when they are called by Nationstar to collect a debt is a common question, which does not present any individualized inquiries.  The Court can and should defer considering this disclosure until summary judgment, because this too is a merits issue.

*Raffin* thoroughly explains why the IPA 632.7 First Call Subclass should be certified.  The evidence at bar is identical to that at issue in Raffin.  The arguments raised by Defendant are identical to those raised by the defendants and rejected in *Raffin* and by this Court in Ades.  There are no individualized issues of consent for the Subclass, and thus, it should be certified.

ii.  **Defendant's Recording Advisory Does Not Give Rise To An Inference Of Actual Or Implied Consent On Subsequent Calls, and Thus, The IPA 632.7 Class Should Be Certified**

If Defendant's outbound call scripts used the language "all calls are monitored or recorded" instead of "this call may be monitored or recorded" then Plaintiffs would

concede that individualized issues would predominate with respect to subsequent calls, and would seek only to certify the proposed IPA 632.7 First Call Subclass, as was done in the *Raffin* matter.  However, Defendant's outbound call advisory does not put consumers on reasonable notice that "all future calls" may be monitored, only that the call they are currently on is being recorded.  *Kight v. Cashcall*, 200 Cal. App. 4th 1377, 1399 (2011).  As described above, the *Raffin* court went so far as to emphasize the term "*all* calls" in its Order, so as to specify the importance of the use of this language, over alternative language used in some of Medicredit's scripts which used the phrase "this call" in the recording advisory.  *Raffin v. Medicredit, Inc*., 2017 WL 131745 at *7 (C.D. Cal. Jan. 3, 2017).

This distinction is also highlighted by the very cases cited by Defendant.  For instance, *Griggs-Ryan v. Smith*, 904 F.2d 112, (1st Cir. 1990) involves a different law than the IPA, and is not substantively applicable to the case at bar, but its reasoning is premised on evidence on the record that showed that defendant informed plaintiff that it records "all incoming calls."  *Id*. at 118.[25]  The reasoning behind the case was that the more frequently someone heard the language that "all" calls were recorded, the more likely they would be put on notice that future calls would be recorded.  This is an unremarkable conclusion.  Of course that would be the case.  Again, language is important.  The more nuanced question at issue here is whether telling someone "this call may be monitored or recorded" puts them on notice that a separate call will likewise be recorded.  Plaintiffs posit that this is a common question of law that can be answered in one stroke, and therefore goes to merits and damages issues.

Again, it bears emphasis that if the Honorable Court agrees with Defendant's position on this issue, the appropriate thing to do is to deny certification only as to the IPA 632.7 Class, and grant certification to the IPA 632.7 First Call Subclass.

---

[25] *In re Google Inc. Gmail Litig*., 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), relied on by Defendant, is of limited relevance, as it does not involve IPA claims.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### iii. Determining whether a borrower was in California is not an individualized issue

Defendant next argues that it is an individualized issue as to whether any class member was located in California when they were recorded. However, This Honorable Court has previously rejected this exact line of argument. *Steven Ades & Hart Woolery v. Omni Hotels Management Corp.*, 2014 WL 4627271 at *14-15 (C.D. Cal. Sept. 8, 2014) ("To the extent that Omni has evidence that some of these calls were not recorded or were not placed from California or by the putative plaintiff, Omni can offer that evidence to disqualify class members.") The same argument was raised with and rejected by the *Raffin* court. *Raffin v. Medicredit, Inc.*, 2017 WL 131745 at *3 (C.D. Cal. Jan. 3, 2017).

### iv. Determining class-wide damages is not an individualized issue

As This Court held in *Ades*, "issues of excessive damages are better addressed at a later stage of the litigation." *Steven Ades & Hart Woolery v. Omni Hotels Management Corp.*, 2014 WL 4627271 at *14-15 (C.D. Cal. Sept. 8, 2014) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir.2006) and *Ades v. Omni Hotels Management Corp.*, 46 F.Supp.3d 999 (C.D. Cal. Sept. 8, 2014)). The same result was reached in *Raffin*. *Raffin v. Medicredit, Inc.*, 2017 WL 131745 at *9 (C.D. Cal. Jan. 3, 2017) ("Medicredit's concerns regarding disproportionate and excessive damages are better addressed at a later stage of the litigation"). Defendant presented no evidence of an individualized damages issue, because there isn't one.

### c. Mr. Borlin's Report Is Not Necessary For Purposes Of Certification, And Plaintiffs Does Not Need To Present A Feasible Methodology For Identifying Class Members Under Under Recent Binding Ninth Circuit Law

As demonstrated by *Raffin*, Plaintiffs' certification theory does not depend on the testimony of experts. In fact, under a nearly identical case, and when presented with a battle of experts and objections from both sides, Judge King held that the court did not need to rely on the expert declarations to rule on whether the requirements of

Rule 23 had been satisfied.  *Raffin v. Medicredit, Inc*., 2017 WL 131745 at *3 n. 3 (C.D. Cal. Jan. 3, 2017).[26]  The same is true here, for the same reasons.[27]

Bolstering this holding, within days of the *Raffin* decision, the Ninth Circuit issued a landmark decision regarding Ascertainability standards in consumer class actions, which will no doubt be cited by courts for decades.  In the decision of *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017), the Ninth Circuit held that in the context of a consumer class action, that plaintiffs not only do not have to identify class members as a prerequisite to meeting their burden under Rule 23, but also do not even have to present a feasible methodology for doing so, as manageability issues are best reserved post-certification.[28]  The Ninth Circuit dissected Rule 23 and its requirements, and disagreed with defendant's interpretation, holding as follows:

> "[T]he language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification. Mindful of the Supreme Court's guidance, we decline to interpose an additional hurdle into the class certification process delineated in the enacted Rule"
> "[The appropriate] question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward"
> "In summary, the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification"

*Id*. at *4, 9 and 10.  Nationstar argues that Plaintiffs must provide evidence that the

---

[26] Likewise, the rulings in *Ades* and *Saulsberry* did not rely on expert testimony.

[27] Plaintiffs will separately address the substance of Defendant's objections to Mr. Borlin's methodology in their Opposition to Defendant's Motion to Exclude.

[28] The case involved mislabeling claims, brought under various state unfair competition laws and false advertising statutes, pertaining to a 100% natural label on the face of the packaging of products purchased by class members. The District Court certified the class, on behalf of consumers in eleven states who purchased applicable products.  *Id*. at 1123.  Defendant appealed, arguing that plaintiffs presented "no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members."  *Id*.

methodologies for identifying class members from non-class members is feasible. Not so.  Nationstar attempts to disguise its argument as one of predominance, but in reality, this is an ascertainability argument it is raising, and one which has very recently been definitively decided in Plaintiffs' favor.  Thus, Nationstar's arguments are contrary to Ninth Circuit authority, and can be disregarded.

### 2. The Class Is Sufficiently Numerous

Defendant argues that Plaintiffs have not presented a sufficiently numerous class.  However, in the same breath, Defendant's expert appears to be admitting that her own review of the class data shows a class size of 67,306 class members.  Kemp Decl., Ex. C, ¶¶ 52-53.  Clearly numerosity is satisfied.

### 3. Plaintiffs Are Adequate And Typical Class Representatives

Unfortunately, Defendant resorts to attacking Plaintiffs' adequacy, rather than substantively addressing its own objective and common violations of the IPA.  This issue can be quickly dispatched.  "[A] court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation." *Kline v. Wolf*, 702 F.2d 400 (2d Cir.1983).  The test for adequacy focuses on conflicts of interest and zeal and competence. While the integrity of a plaintiff can be one factor considered, competency of counsel[29] and absence of antagonistic interests are usually considered determinative.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).  Courts are rightfully skeptical of unsubstantiated character attacks on a class representative.  *Polanco v. Schneider Nat. Carriers, Inc.,* 2012 WL 10717265, at *5 (C.D. Cal. Apr. 25, 2012) ("We do not look

---

[29] Defendant concedes that Plaintiffs' counsel is adequate to represent the class.

22

with sympathy upon these types of unsubstantiated character attacks by Defendant in opposing class certification, given that they are made for the purpose of defeating class certification, not out of any genuine concern for the interests of the class.")

Just as in this line of cases, Plaintiffs understand their obligations as class representatives are to protect the class, and make decisions that were within their fiduciary duties to the others whose privacy was similarly invaded. Dkt. Nos. 35-5 and 35-6.  Plaintiffs have no conflict with the class members.  Plaintiffs have diligently pursued this matter as a class action.[30]  Plaintiffs are represented by counsel who has been certified as class counsel on numerous other matters, and Defendant does not challenge class counsel's adequacy.  The Court should be highly skeptical and "wary" of Defendant's attacks against Plaintiffs, which are largely unwarranted.

Defendant has likewise not convincingly challenged Plaintiffs' typicality. Defendant's strategy in this regard is highly bizarre.  It attacks Plaintiffs' Article III standing and argues that since Plaintiffs' suffered a minimal injury if any, they are not typical.  But Defendant's hoopla regarding *Spokeo* is much ado about nothing.  For the very same reasons as thoroughly discussed in both *Raffin* decisions, IPA violations are an "affront to human dignity" which violate basic rights to privacy, causing a concrete and particularized injury.  *Raffin v. Medicredit, Inc.* 2016 WL 7743504 at *3 (C.D. Cal. Dec. 19, 2016).  A wealth of post-*Spokeo* cases hold that privacy violations convey standing.[31]  The majority of cases in the wake of *Spokeo* have held that it does

---

[30] The circumstances of how this case arose are irrelevant.  Defendant's speculation into confidential discussions between Plaintiffs and their counsel are incorrect.  What is important is that Plaintiffs feel strongly that their privacy rights were violated, and that the rights of the rest of the class members should be protected and pursued.

[31] *Bona Fide Conglomerate, Inc. v. SourceAmerica,* 2016 WL 3543699 (S.D. Cal. June 29, 2016); *Thomas v. FTS USA, LLC*, 2016 WL 3653878 (E.D. Va. June 30, 2016); *In re Nickelodeon Consumer Privacy Litig.*, 2016 WL 3513782 (3d Cir. June 27, 2016).

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

not impact certification.[32]  Moreover, the Ninth Circuit has held that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Beyond the fact that *Spokeo* does not relieve Defendant of liability, Nationstar has not filed a motion to dismiss on the basis that Plaintiffs lack standing.  Rather, Nationstar asks for this substantive relief in its Opposition to Plaintiffs' Motion for Class Certification.  This is a procedurally improper request.  The Honorable Court has no motion before it relating to Plaintiffs' standing to bring IPA claims.  Ruling that Plaintiffs' lack standing in a class certification order would be improper.

Defendant acknowledges that all of its scripts and policy documents specifically contain no recording advisory at the outset.  Plaintiffs have narrowly tailored the class definition in such a way as to focus on the singular legal issue of whether a recording advisory must be given at the outset of a call under 632.7.  This was Defendant's common policy and practice, not some aberration.  Moreover, every one of the recordings provided to the Court in support of Plaintiff's Motion suffers from this defect.  Plaintiffs' claims are typical of everyone who was recorded under these same common policies.  Because there was no advisory given at the outset of Plaintiffs' calls, Plaintiffs suffered the same injury as members of the class for which they have sought certification.  Plaintiffs and class members were all recorded on their cell phones without consent.  Plaintiffs and class members all suffered the same invasions of privacy as a result of these surreptitious recordings.  § 632.7 of the IPA is a strict liability statute.  Plaintiffs have presented a streamlined certification theory which affects all members identically, and which is based off of Defendant's standard and common policies, practices and scripts.  Plaintiffs are both typical and adequate.

---

[32] *McLaughlin v. Wells Fargo Bank, NA*, No. C 15-02904 WHA, 2016 WL 3418337 (N.D. Cal. June 22, 2016); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal. July 26, 2016); *Lafollette v. Liberty Mut. Fire Ins. Co*., No. 2:14-CV-04147-NKL, 2016 WL 4083478, (W.D. Mo. Aug. 1, 2016).

4. **Class Action Treatment Is Superior**

As This Court held in *Ades*, "the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.  Therefore, the Court finds that plaintiffs have satisfied their burden of showing superiority."  *Steven Ades & Hart Woolery v. Omni Hotels Management Corp*., 2014 WL 4627271 at \*14-15 (C.D. Cal. Sept. 8, 2014).  The same result was reached in *Raffin*.  The Superiority analysis can end there.

III.   **CONCLUSION**

Defendant must be held accountable for mass-invasions of privacy that affected every single person that it called and recorded in reference to their mortgages.  There is nothing "palpably unfair" about enforcing binding California law against a serial offender of privacy rights, which engaged in over a hundred thousand acts that each individually would constitute an "affront to human dignity."  Defendant should take up its grievances with the California Legislature.  Fairness does not dictate that Defendant be given a get out of jail free card based on its pure speculation.  This Honorable Court should send a strong message to Defendant that class certification is not the time or place to make emotional cries for mercy.  The law is the law.  And each and every one of the Predominance arguments raised by Nationstar has been addressed either by this Honorable Court in *Ades*, or by Judge King in *Raffin*, to complete satisfaction.  There is no reason to depart from these well-reasoned rulings. For the foregoing reasons, Plaintiffs submit that their Motion for Class Certification under Rule 23(b)(3) against Defendant should be granted.

Dated**:** March 24, 2017            **Law Offices of Todd M. Friedman, P.C.**

By: _/s/ Adrian R. Bacon_____
     Todd M. Friedman, Esq.
     Adrian R. Bacon, Esq.
     Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 24th day of March, 2017, with:

United States District Court CM/ECF system

Notification sent electronically on this 24th day of March, 2017, to:

Honorable Judge Christina A. Snyder
United States District Court
Central District of California

Mary Kate Kamka
Erik Kemp
Severson & Werson

<u>/s/ Adrian R Bacon</u>
Adrian R Bacon
Law Offices of Todd M. Friedman
Attorney for Plaintiffs

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION