Todd M. Friedman (216752)
Adrian R. Bacon (280332)
**Law Offices of Todd M. Friedman, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: (877) 206-4741
Fax: (866)633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiffs*,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED ZAKLIT AND JESSY ZAKLIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No. 5:15-CV-02190-CAS-KK<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT OF GREALD BORLIN**<br><br>**Date: April 24, 2017**<br>**Time: 10:00 A.M.**<br>**Place: Courtroom 8D**<br>**Judge**: **Hon. Christina A. Snyder** |

OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT OF GREALD BORLIN

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................1

II. FACTUAL BACKGROUND .......................................................................3

III. LEGAL STANDARD ..................................................................................5

IV. LEGAL ANALYSIS.....................................................................................8

   A. Per *Briseno*, and *Raffin*, Borlin's Expert Report Is Unnecessary For Certification, Since It Goes Only To Feasible Methodology Of A Subclass That Is No Longer Plaintiffs' Targeted Class........................................................8

   B. Mr. Borlin Is Qualified .................................................................................11

   C. Mr. Borlin Proposes A Feasible Methodology ..............................................13

V. CONCLUSION ............................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Briseno v. ConAgra Foods, Inc*., 2017 WL 24618 (9th Cir., Jan. 3, 2017) ... 4, 11, 13, 15

*Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365 (N.D. Cal. 2010) ... 9, 14

*Daubert v. Merrell Dow Pharms*., Inc., 509 U.S. 579 (1993) ... 8, 10

*Ellis v. Costco Wholesale Corp*., 657 F.3d 970 (9th Cir. 2011) ... 8, 9

*Ewert v. eBay, Inc*., 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ... 9

*Forcellati v. Hyland's, Inc*., 2014 WL 1410264 (C.D. Cal. April 9, 2014) ... 9

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ... 8

*Guido v. L'Oréal, USA, Inc*., No. 2:11–CV–01067–CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ... 10

*Jinro Am. Inc. v. Secure Invests., Inc*., 266 F.3d 993 (9th Cir. 2001) ... 9

*Leyva v. Medline Industries Inc*., 716 F.3d 510 (9th Cir. 2013) ... 9

*Morales v. Kraft Foods Group, Inc*., 2015 WL 10786035 (C.D. Cal. June 23, 2015) ... 9

*Raffin v. Medicredit, Inc*., 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ... passim

*Sementilli v. Trinidad Corp*., 155 F.3d 1130 (9th Cir. 1998) ... 9

*Sterner v. U.S. Drug Enforcement Agency*, 467 F.Supp.2d 1017 (S.D. Cal. 2006) .. 8

*United States v. Espinosa*, 827 F.2d 604 (9th Cir. 1987) ... 8

*United States v. Finley*, 301 F.3d 1000 (9th Cir.2002) ... 8

*Waller v. Hewlett-Packard Co*., 295 F.R.D. 472 (S.D. Cal. 2013) ... 9

**Rules**

Fed. R. Civ. P. 23 ... passim

Fed. R. Evid. 702 ... 7, 8, 9, 14

ii
OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT OF GREALD BORLIN

## I. INTRODUCTION

In its Motion To Strike, Defendant attempts to divert attention away from the widespread, common, and easily identifiable privacy invasions it has committed in recording the private conversations of nearly seventy thousand consumers without their knowledge or consent. But in doing so, Defendant materially undersells Mr. Borlin's expertise and wealth of experience in the area of voice recordings, voice recognition analytics, and call centers generally, misconstrues the testimony of Mr. Borlin, and misstates the purpose of Mr. Borlin's proffered testimony entirely.

Mr. Borlin has spent the better part of 20 years working in the technology sector, a large portion of which he has spent implementing, selling, taking training courses in, and speaking with representatives of voice analytics software platforms. Mr. Borlin helped set up a call center much like Nationstar's, which used voice recording software just like Nationstar's. Mr. Borlin has taken training courses in order to learn the ins and outs of voice analytics software's capabilities. Mr. Borlin also owns and operates his own expert consulting business which specifically focusses on the ability to use voice analytics software. Mr. Borlin meets the *Daubert* Test's threshold as an expert witness.

To put his methodology to the test, Mr. Borlin reviewed and conducted a voice analytics and recognition analysis of every one of the recordings produced by Nationstar to date in this matter, using the very methodology he proposed in his Report. The result of this analysis was that Mr. Borlin was able to pinpoint, using automated voice analytics, the exact second in every single one of the recordings when a representative provided the consumer with a recording advisory, as well as identify every recording in which no advisory was given. The accuracy of this analysis was 100%, which Mr. Borlin verified after the fact by personally listening to every one of the recordings, while comparing to the results of the software's analysis. Defendant is quick to dismiss Mr. Borlin's proposed methodologies as bunk; however, the reality is that Mr. Borlin's methodologies resulted in a 100%

accurate analysis of all of the recordings that were produced in this case. It is impossible to argue with those results. And so instead of doing so, Defendant resorts to simply redefining the term "accuracy" and talking about something else entirely, which is irrelevant altogether.[1]

But even putting aside whether Mr. Borlin is or is not qualified under *Daubert*, Defendant's Motion to Exclude is a smokescreen, because Plaintiffs' Class Certification posture does not depend on the admissibility of Mr. Borlin's Report anyways. Indeed, the recent case of *Raffin v. Medicredit* made it clear that where a company's common policy and common scripts, and common testimony supports the notion that its common practice is not to provide a recording advisory at the outset of a call, a review of expert opinions is unnecessary for purposes of analyzing the Rule 23 requirements. The class definition can be tailored to encompass these issues without the need for any analysis of the recordings whatsoever. Furthermore, the recent *Briseno v. Conagra Foods* decision makes it clear that plaintiffs do not have to propose a feasible methodology for identifying class members in order to satisfy the Rule 23 requirements. Defendant's position regarding Mr. Borlin is both premature and irrelevant in light of these two recent decisions. For these reasons, as discussed in more detail below, Defendant's Motion should be denied.

---

[1] Defendant focusses its position regarding "accuracy" on the words that appear in the transcribed messages that are outputted by Mr. Borlin's employment of analytics software. This is the wrong definition of accuracy. Of course it is the case that voice recognition technology won't get every word right. People mumble, phones have brief connection issues, and there are also accents and dialects that may not be picked up perfectly. It cannot be perfect. But that's not the point. Indeed, the **only** thing that matters whatsoever for purposes of this case is whether the recognition technology can accurately identify 1) whether a recording advisory was given, i.e. whether the intent of the Nationstar agent was to inform the consumer that the call was being recorded, and 2) if so, at what point during a call such an advisory was given, i.e. whether it was at the "outset" of a call. Mr. Borlin's methodology did those two things with pinpoint accuracy in 100% of tested cases.

OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT OF GREALD BORLIN

## II. FACTUAL BACKGROUND

Defendant presents portions of Mr. Borlin's testimony and the record itself taken out of context, with relevant sections having been omitted. For this reason, Plaintiff files contemporaneously hereto, portions of Volume I of the Deposition transcript of Gerald Borlin. Bacon Decl. Ex. A. (hereinafter "Borlin Dep. Vol. I"), the full and complete Volume II of the Deposition transcript of Gerald Borlin. Bacon Decl. Ex. B. (hereinafter "Borlin Dep. Vol. II"), and a copy of Mr. Borlin's resume (attached as Bacon Decl. Ex. C).

Gerald Borlin is an experienced technology leader with over 25 years of experience in the areas of telecommunications, call centers, speech analytics and software and hardware services. Bacon Decl Ex. C. For the past four years, Mr. Borlin has owned and operated E&S Discovery, a consulting firm which exclusively is dedicated to the forensic analysis and translation of Voice, Data and Documentation into accurate results oriented reports and evidence. *Id*. Put into common English, E&S specializes in speech analytics, the process of analyzing recordings of phone calls *en masse* to efficiently extract pertinent information from recorded interactions. In the case at bar, Mr. Borlin has been retained to perform two functions:

1. Using speech analytics and voice recognition technology to accurately identify whether a recording advisory was provided by a Nationstar Agent to a consumer on a recorded line; and

2. If a recording advisory was provided, using speech analytics and voice recognition technology to pinpoint the time during a call that such an advisory was given.

Mr. Borlin has 25 years of experience in the technology industry, and has experience in utilizing, implementing and even marketing voice analytics and speech analytics software. Bacon Decl. Ex. C. Defendant goes out of its way to falsely characterize Mr. Borlin as being unqualified as an expert in voice recognition software, because he has acted in a sales capacity in some of the positions he has held. This is an unfair

1  characterization.

2      Mr. Borlin has a degree in Information Systems, with an emphasis on database management, networking systems and telecommunications. Bacon Decl. Ex. C. Mr. Borlin's work experience includes setting up a call center with a voice recording and speech analytics system for 35 a call center locations for Toyota. Bacon Decl. Ex A at 13:23-28:3, and Ex C. He also worked for Lucent Technologies in the area of speech analytics, and was involved in design and implementation of voice recognition software systems. *Id*. at 28:3-31:4. While working for Neudesic LLC, Mr. Borlin received specialized training from Microsoft on the use of its speech analytics software (a version of the software that Mr. Borlin ultimately used in this case to analyze the sample of recordings produced by Nationstar). *Id*. at 48:21-49:20. From 2011 until 2016, Mr. Borlin has worked at WorkForce solutions, where part of his job involves working with Integrated Voice Response Systems (IVR) and speech analytics software. 51:6-54:17. Mr. Borlin then founded E&S Discovery in 2013, which he has owned and operated since that time. The business exclusively provides consulting services in the field of voice recognition and speech analytics, with an eye towards litigation expert services. *Id*. at 57:17-58:8; Bacon Decl. Ex C

    After being retained in this case, Mr. Borlin was provided with the sample of recordings produced by Nationstar in discovery. Mr. Borlin used multiple different "engines" (voice recognition software platforms) in order to test for the most accurate model as it pertained to the sample in this case. Bacon Decl. Ex B at 229:18-235:12; 237:1-254:3. Mr. Borlin was given instructions by counsel to prioritize the accuracy of if and when a recording advisory was given to the recorded consumer above the accuracy of the actual words that were stated during the conversation being accurately portrayed on a written transcript of the call. Thus, Mr. Borlin has defined the term "accuracy" as being measured by the intention of the agent, i.e. whether they initiated telling the consumer that the call may be monitored or recorded, or some variation on similar words that sounded enough like this language that the recording was flagged

4

as a hit for having the recording advisory provided.  Bacon Decl. Ex B at 263:19-264:16.  The point at which such a hit takes place is flagged by the Engine software, along with a time stamp, indicating the exact time in minutes and seconds during the recording when the recording advisory was actually first provided to the consumer if at all.  Bacon Decl. Ex B at 229:18-235:12; 237:1-254:3; referencing documents filed as Dkt. 61-3 at Pgs. 152-165.[2]  Mr. Borlin used the Microsoft voice recognition Engine after testing several Engines and determining it to be the most reliable based on the sample. Bacon Decl. Ex B at 196:23-197:11; 232:4-19.  He then ran all 84 recordings in the Nationstar sample through the Engine and ran a report.  The report determined with 100% accuracy (based on the definition above) both 1) whether a recording advisory was issued during the recording, and 2) at what point, to the nearest second, the advisory was given during the recording.  Bacon Ex. B at 199:9-200:13; 203:5-204:6; 270:24-271:8; Dkt. 61-3 at Pgs. 152-165.  Mr. Borlin verified this by listening to all of the recordings himself after studying the results of the software analysis.  Stated otherwise, using Mr. Borlin's methodology, there were <u>no false positives in the analysis of the data</u>.

Mr. Borlin is qualified to act as an expert.  Mr. Borlin's methodology is sound, and in fact produced 100% accurate results.  Even so, class certification does not hinge on Mr. Borlin's testimony being admissible.  Defendant's Motion should be denied.

### III.  LEGAL STANDARD

Under Federal Rule of Evidence 702:

> "[i]f scientific, technical, or other specialized knowledge will assist the

---

[2] Both Mr. Borlin and Veritone have signed the protective order in this case. Defendant attempts to paint Mr. Borlin as having been careless with the private information of class members, but the record shows that he in fact did not provide copies of the recordings to Veritone, and moreover, that Veritone signed the protective order and has security protocols in place anyways, making this a moot issue. See Dkt. No. 61-3.

trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.[3]

Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms*., Inc., 509 U.S. 579, 592-93 (1993). *See also Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 982 (9th Cir. 2011) ("Under Daubert, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable").

In conducting this preliminary assessment, the trial court is vested with broad discretion. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir. 1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous"). "In determining whether expert testimony is

---

[3] See also *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir.2002) ("[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion"); *Sterner v. U.S. Drug Enforcement Agency*, 467 F.Supp.2d 1017, 1033 (S.D. Cal. 2006) ("There are three basic requirements that must be met before expert testimony can be admitted. First, the evidence must be useful to a finder of fact. Second, the expert witness must be qualified to provide this testimony. Third, the proposed evidence must be reliable or trustworthy" (citations omitted)).

admissible under Rule 702, the district court must keep in mind [the rule's] broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp*., 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted). *See also Jinro Am. Inc. v. Secure Invests., Inc*., 266 F.3d 993, 1004 (9th Cir. 2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony" (internal quotation marks omitted)). On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiff's claims; instead, the testimony must be relevant in assessing "whether there was a common pattern and practice that could affect the class as a whole." *Ellis*, 657 F.3d at 983.

Moreover, at the class certification stage, an expert's opinion is limited to a review of whether the claims meet the standards under Rule 23, not whether the trier of fact agrees with the analysis or proposed methods. *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 379 (N.D. Cal. 2010). Indeed, the weight of the authority in California District Courts holds that experts are not required to actually conduct their analysis pre-certification, unless directed to do so by the court, to shed light on legitimately-raised pre-certification disputes.[4]

---

[4] *See Ewert v. eBay, Inc*., 2010 WL 4269259 at *11-12 (N.D. Cal. Oct. 25, 2010) (expert's proposed methodology accepted without actual demonstration); *Waller v. Hewlett-Packard Co*., 295 F.R.D. 472, 489-90 (S.D. Cal. 2013) (citing *Chavez*, 268 F.R.D. at 379 and *Leyva v. Medline Industries Inc*., 716 F.3d 510, 513–14 (9th Cir. 2013) and requiring nothing in the way of expert testimony to find that common issues predominate); *Forcellati v. Hyland's, Inc*., 2014 WL 1410264 at *9 (C.D. Cal. April 9, 2014) ("products' efficacy can be established on a class-wide basis through clinical studies and expert testimony"); *Morales v. Kraft Foods Group, Inc*., 2015 WL 10786035 at *7-10 (C.D. Cal. June 23, 2015) (holding that "[a]t class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time" and that "[w]hen discovery has not yet closed, it may be appropriate to certify

## IV. LEGAL ANALYSIS

As an overarching point, Plaintiffs' general methodologies outlined in the brief were accepted by the *Raffin* Court, and have been held sufficient for purposes of class certification in the *Ades* matter by This Honorable Court. Mr. Borlin's testimony is straightforward and well within the boundaries of acceptability under *Daubert*. Mr. Borlin has spent the better part of two decades working in the technology sector, including with call centers and for software technology companies, learning about voice recording and transcription software used in the industry. While he has held sales roles at some of these companies, that hardly makes him unqualified to be an expert in voice transcription technology. In his sales capacity, Mr. Borlin was required to take training on voice recording products to learn the product, including training on the same software engine that was used in his analysis of the recordings at issue. Mr. Borlin frequently assisted with implementation of these IVR products with clients. Mr. Borlin has acted as an expert for the past four years and has spent much of that time learning through firsthand use about various forms of voice recognition software programs available in the marketplace. Mr. Borlin meets the requirements under *Daubert*.

### A. Per *Briseno*, and *Raffin*, Borlin's Expert Report Is Unnecessary For Certification, Since It Goes Only To Feasible Methodology Of A Subclass That Is No Longer Plaintiffs' Targeted Class.

As a starting point, Plaintiffs cited to Mr. Borlin's Expert Report a sum total of three times in their Motion for Class Certification, and each of those times was purely in relation to presenting the Honorable Court with feasible methodology for identifying class members, for a subclass that is no longer the focus of Plaintiffs'

---

a class based on proposed damages modeling and subject to possible decertification after the close of discovery."); *Guido v. L'Oréal, USA, Inc.*, No. 2:11–CV–01067–CAS, 2014 WL 6603730, at *11–14 (C.D. Cal. July 24, 2014).

Motion. For the Honorable Court's convenience, it bears reminder that Mr. Borlin's declaration was only cited by Plaintiffs for three topics in their moving papers:

1. For the proposition that the recordings themselves can serve as a record of whether a recording advisory was given at all to a consumer; (See Motion for Class Certification at Pg. 5)
2. That voice transcription software can be used to transcribe recordings and conduct key word searches, if necessary, to identify members of Plaintiff's IPA 632.7 Late Advisory Cell Phone Class, i.e. which analyzes whether a recording advisory was issued during the first 30 seconds of a call; (See *Id*. at Pg. 15) and
3. That analyzing the several hundreds of thousands of recordings at issue to screen for the issues in bullet point 2, if the Court determines that doing so is necessary, would take 15 days and could be accomplished with 90% or greater level of accuracy. (*Id*.)

To be clear, <u>none of these three points are critical, or even relevant at this stage to Plaintiff's class certification posture</u>. Two decisions which came down after Plaintiffs moved for class certification, but before Defendant filed its Opposition to class certification and motion to exclude dictate this issue: *Raffin v Medicredit*, and *Briseno v Conagra*.

As described in great detail in Plaintiffs' Reply in Support of Class Certification, the decision of *Raffin v. Medicredit, Inc*., 2017 WL 131745 at *3 n. 3 (C.D. Cal. Jan. 3, 2017) should act as the gold standard analyzing class certification under Rule 23 in the context of a Penal Code § 632.7 class action against a debt collector whose common policy and practice is (just as is the case with Nationstar) to not issue a recording advisory to consumers until after gathering personal identifying information from them, i.e. not "at the outset" of the conversation. For purposes of the Motion at bar, it is important to note that Plaintiffs have tailored their class definition to match the class that was certified in *Raffin*, which does not hinge in any

way shape or form on individually reviewing or listening to any recordings:

IPA 632.7 Class:

> All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated in an outbound[5] telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

IPA 632.7 First Call Subclass:

> All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated for the first time in an outbound telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

Nationstar utilized a common and prevailing practice, memorialized in written policies, standardized scripts and demonstrated by the sample of recordings produced to date, of not issuing a recording advisory at the outset of its recorded conversations with mortgage holders. The methodology proposed by Mr. Borlin is thus unnecessary for purposes of class certification, because the conduct that is subject to Plaintiffs' Motion happened on every single phone call placed and recorded by Nationstar. Voice transcription software is not necessary to identify these class members. It was only necessary to identify class members in Plaintiffs' previously proffered IPA 632.7 Late Advisory Cell Phone Class definition.

Plaintiffs are already in possession of information necessary to identify class members in the definitions offered above, which were tailored to match the *Raffin* class definitions, and are comprehensive of the individuals who were subjected to Defendant's allegedly unlawful IPA policies during the applicable class period. Moreover, the only expert whose experience will be required in order to identify these

---

[5] "Outbound" is defined as calls placed outbound from Defendant to Class Members.

class members is Jeffrey Hansen, who has already scrubbed the outbound dial list of phone numbers called by Defendant with California area codes, to limit it to only cellular phones. That work has already been done. Plaintiffs know exactly how many class members there are.

Second, the recent case of *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) made it clear that plaintiffs not only do not have to identify class members to meet their burden under Rule 23, but also <u>do not even have to present a feasible methodology for doing so</u>, as manageability issues are best reserved post-certification. *Id*. at *4, 9 and 10. Plaintiffs describe the holding of this decision in their Reply in Support of Class Certification, and incorporate it by reference. The important issue to bear in mind is that the standards under Rule 23 for identifying and ascertaining class members have been clarified since Plaintiffs filed their Motion for Class Certification. Mr. Borlin's testimony no longer carries the same weight for purposes of Rule 23.

In sum, the *Raffin* decision made it unnecessary for Plaintiffs to rely on Mr. Borlin's testimony for purposes of seeking class certification. And the *Briseno* case made it unnecessary for any plaintiff to present a feasible methodology for identifying class members to meet the Rule 23 requirements. Perhaps Mr. Borlin's testimony will be important later, such as for instance in determining damages issues. But for purpose of Rule 23, it is not necessary at this time, for the Honorable Court to rule on Class Certification. The fact that Defendant has gone to so much trouble to try and discredit Plaintiff's Expert shows that it does not understand the certification theory upon which Plaintiffs have moved, and has not fully processed the *Raffin v Medicredit* decision, or the *Briseno* decision.

### B. Mr. Borlin Is Qualified

Mr. Borlin has 25 years of experience in the technology industry, and has experience in utilizing, implementing and even marketing voice analytics and speech analytics software. He holds a degree in Information Systems, with an emphasis on

database management, networking systems and telecommunications. He has extensive experience not only working with IVR systems and speech analytics software, but has implemented it in call centers, has taken training seminars and courses learning how certain IVR systems operate in the industry, and even has taken course work from Microsoft on a version of the Engine that is likely going to be used if any voice analytics become necessary at a later stage of this case. Over the past four years, Mr. Borlin has put this experience and training to use by operating his own expert consulting services business, which exclusively focusses on voice and speech analytics, IVR with an eye towards litigation expert services.

Mr. Borlin's testimony is based on sufficient facts and data. He has reviewed every one of the recordings produced in this case to determine the sound quality, and has run tests on the recordings to put his methodologies to the test. Prong one of FRE 702 is met. These methodologies not only are based on reliable principles, but in fact actually worked. Indeed, Mr. Borlin's preliminary analysis produced results that are 100% accurate, as they pertain to the only two relevant issues: 1) did Nationstar disclose that the person was being recorded; and 2) when did they do so. Prong Two and Three of FRE 702 are satisfied as well.

Mr. Borlin is not employing junk science, and there is nothing in the record to suggest that Mr. Borlin's methods are untrustworthy. All one need do is listen to the recordings themselves and compare them to Mr. Borlin's report to determine whether the software he employed accurately analyzed the records. Mr. Borlin used speech analytics software that is readily available in the industry, and in fact is used by companies like Defendant to analyze call recordings in the same or similar manner. Most importantly, because the testimony is being used in support of Plaintiffs' Motion for Class Certification, the standard is more lax, requiring only that the testimony is relevant in assessing whether the claims meet the standards under Rule 23, not whether the trier of fact agrees with the analysis or proposed methods. *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

2010). For these reasons, and for reasons stated in Plaintiff's Reply in Support of Motion for Class Certification, Mr. Borlin's testimony should not be stricken.

### C. Mr. Borlin Proposes A Feasible Methodology

As described repeatedly throughout this motion, Plaintiff's Motion for Class Citification, and Plaintiff's Reply brief, the methodologies recommended by Mr. Borlin are not required in order for the class to be certified under Rule 23, per *Raffin* and *Briseno*. Nevertheless, Mr. Borlin's methodologies are both sound and feasible. Defendant's expert is like a ship passing in the night from Mr. Borlin's testimony and methodology. Defendant incorrectly focusses on the concept of "accuracy" from the standpoint of whether a transcription extracted from the analytics software gets all of the words right. Plaintiff is not contesting that there are many instances where that's not the case. But it doesn't matter. The only relevant inquiry here is whether there is a violation of Penal Code § 632.7, which requires that a recording advisory be given at the outset of the call.

While an individualized inquiry is not necessary for the class to be certified, for reasons stated in Plaintiff's Reply to Motion for Class Certification, speech analytics could be used to demonstrate a Penal Code § 632.7 violation by determining 1) whether there was a recording advisory at all, and 2) whether it was given at the outset of the conversation. Mr. Borlin's methodology proves that no matter what the legal definition of "outset" is, such a class could be ascertained and identified, because the software he employed is so reliable that it can pinpoint exactly where in a conversation a recording advisory is issued, with a very high level of accuracy. Indeed, Mr Borlin's analysis resulted in a 100% accuracy mark for each of these two operative triggers.

Plaintiffs and Mr. Borlin do not dispute that not every word in a transcript of a recording is going to come out accurate. People have accents, others mumble, cell phone reception may be questionable, and there can sometimes be background noise in conversations. These things are an inescapable reality. But none of that matters

if the voice recognition software can identify a § 632.7 violation with perfect accuracy. As Mr. Borlin testified, it is the "intent" of the agent, not the specific words that matter. This is the relevant inquiry upon which the Honorable Court should base its ruling.

For these reasons, Mr. Borlin is qualified to act as an expert. Mr. Borlin's methodology is sound, and in fact produced 100% accurate results. Even so, class certification does not hinge on Mr. Borlin's testimony being admissible. Defendant's Motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Honorable Court deny Defendant's Motion to Exclude the Report of Gerald Borlin.

Dated**:** March 24, 2017            **Law Offices of Todd M. Friedman, P.C.**

By: /s/ Adrian R. Bacon
    Todd M. Friedman, Esq.
    Adrian R. Bacon, Esq.
    Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

Filed electronically on this 3rd day of April, 2017, with:

United States District Court CM/ECF system

Notification sent electronically on this 3rd day of April, 2017, to:

Honorable Judge Christina A. Snyder
United States District Court
Central District of California

Mary Kate Kamka
Erik Kemp
Severson & Werson

/s/ Adrian R Bacon
Adrian R Bacon
Law Offices of Todd M. Friedman
Attorney for Plaintiffs

15
OPPOSITION TO MOTION TO EXCLUDE EXPERT REPORT OF GREALD BORLIN