UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | | Date | July 24, 2017 |
|---|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Adrian Bacon | Erik Kemp |
| Asaf Agazanof | |

**Proceedings:**   PLAINTIFFS ALFRED ZAKLIT AND JESSY ZAKLIT'S MOTION FOR CLASS CERTIFICATION  (Dkt. 35, filed December 12, 2016)

## I.   INTRODUCTION

On October 23, 2015, plaintiffs Alfred Zaklit and Jessy Zaklit, individually and on behalf of those similarly situated, allege that defendants Nationstar Mortgage LLC ("Nationstar") and Does 1–10, inclusive, violated California's Invasion of Privacy Act in recording their telephone conversations.  Dkt. 1 ("Compl.").  Plaintiffs allege two claims: (1) eavesdropping or recording confidential communications, in violation of California Penal Code § 632; and (2) intentional recording of their communications without consent, in violation of California Penal Code § 632.7.  The gravamen of plaintiffs' complaint is that Nationstar contacted plaintiffs by telephone and obtained their names, Jessy's residential zip code, and Alfred's social security number before informing plaintiffs that Nationstar was recording the conversation.  Id. ¶¶ 13–14.

On December 12, 2016, plaintiffs filed a motion for class certification.  Dkt. 35.  In support of their motion, plaintiffs filed a memorandum, which remains partially under seal.  Dkt. 71-15 ("Motion").  Plaintiffs seek to certify only their Section 632.7 claim.  Id. at 6 n.10.  On March 20, 2017, Nationstar filed its opposition, also partially under seal. Dkt. 61 ("Opp'n").  Plaintiffs filed their reply on March 24, 2017.  Dkt. 63 ("Reply").

On March 20, 2017, Nationstar filed a motion to exclude the declaration, opinions, and testimony of plaintiffs' expert, Gerald A. Borlin.  Dkt. 61-4.  Plaintiffs' filed their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

opposition to this motion on April 3, 2017, dkt. 66, and Nationstar filed its reply on July 14, 2017, dkt. 73.[1]

The Court held oral argument on July 24, 2017.  Having carefully considered the parties arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Jessy Zaklit received a telephone call from Nationstar on or about October 27, 2014.  Compl. ¶ 12.  Nationstar did not advise Jessy that it was recording the conversation until after Jessy had disclosed her name and current residential zip code.  Id. Alfred Zaklit received a telephone call from Nationstar on or about November 26, 2014. Id. ¶ 13.  Nationstar did not advise Alfred that it was recording the conversation until after he had disclosed his name and social security number.  Id.  Plaintiffs allege that Nationstar recorded plaintiffs' calls without their consent on numerous other occasions. Id. ¶ 14.

Plaintiffs, individually and on behalf of those similarly situated, allege that Nationstar violated California's Invasion of Privacy Act ("CIPA") by recording portions of telephone conversations of plaintiffs and the putative class members without their consent.  See generally id.  Plaintiffs allege that Nationstar had a policy of recording incoming and outgoing calls made to California residents about individuals' finances and debt.  Id. ¶ 19.  At the outset of conversations initiated by Nationstar ("Outbound Calls"), plaintiffs allege that Nationstar failed to advise consumers that they were being recorded. Id. ¶¶ 15–16, 19.  Plaintiffs aver that Nationstar representatives used scripts that instructed the agents to advise consumers that they are being recorded, but that this advisory was provided only *after* requesting personal information from consumers.  Id. ¶ 15.

Based on these allegations, plaintiffs sued Nationstar under CIPA, Cal. Penal Code §§ 630 et seq., which provides a private right of action against any defendant who violates the statute.  See Cal. Penal Code § 637.2.

---

[1] The Court does not rely on Borlin's testimony in resolving the motion for class certification and plaintiffs concede that Borlin's report is not necessary for purposes of certification upon the narrowing of their class definition (as described in greater detail below).  See Reply at 20–21.  Accordingly, the Court **DENIES** as moot Nationstar's motion to exclude Borlin's testimony, declaration, and opinions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

## III.   LEGAL STANDARDS

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions.

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 546 U.S. 338, 345 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000); Fed. R. Civ. P. 23(a). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).

In addition, the Court must consider whether the class is maintainable under Rule 23(b). Dukes, 546 U.S. at 345. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions, (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely encountered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

in the management of a class action. Id. at 1190–92. "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. at 1189 (quotation marks omitted).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 564 U.S. at 350. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 350–51.

## IV.   DISCUSSION

Although plaintiffs bring individual claims under Sections 632 and 632.7 of the California Penal Code, they seek to certify only their Section 632.7 claim for class treatment. Section 632.7(a) prohibits the recording of calls on cellular or cordless telephones without the consent of all parties to the communication. Cal. Penal Code § 632.7(a). Specifically, Section 632.7 provides:

> Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Id. Plaintiffs initially requested that the Court certify the following subclasses:

> IPA 632.7 Subclass: All persons in California whose outbound telephone conversations were recorded without their consent by Defendant or its agents, during the Class Period, and wherein a cellular or cordless device was used by at least one party to the conversation, within the one year prior to the filing of the Complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

IPA 632.7 Cell Phone Subclass: All persons in California whose outbound telephone conversations were recorded without their consent by Defendant or its agents, during the Class Period, and wherein a cellular device was used by the Subclass Member, within the one year prior to the filing of the Complaint.

IPA 632.7 Late Advisory Cell Phone Class: All persons in California whose outbound telephone conversations were recorded without their consent by Defendant or its agents, during the Class Period, and wherein a cellular device was used by the Subclass Member, but where Defendant or its agent/s did not advise the Subclass Member within 30 seconds of the onset of the call, that their call was being recorded, within the one year prior to the filing of the Complaint.

Motion at 6–7. Plaintiffs limit the Class Period to October 23, 2014 to May 2016, when Nationstar changed its call scripts to provide a recording advisory at the beginning of the call. Id. at 6, n.11; see dkt. 71-1, Deposition of Kristen Trompisz ("Trompisz Depo.") 42:7–45:14.

## A.     Rule 23(b)(3) Requirements

Nationstar opposes plaintiffs' certification motion primarily on the ground that individual issues predominate over common issues. Opp'n at 8–25. Accordingly, the Court considers whether plaintiffs have satisfied the requirements of Rule 23(b) first.

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

### 1.     Predominance

Predominance focuses on "the relationship between the common and individual issues," requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. Hanlon, 150 F.3d at 1022. The predominance inquiry "trains on legal or factual questions that qualify each class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

member's case as a genuine controversy." Amchem Prods., 521 U.S. at 625. "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S & M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007). "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino, 97 F.3d at 1234. The focus is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623.

### a.    Interpreting Section 632.7

Nationstar first contends that that "Section 632.7 does not require that 'disclosure' be given at the 'outset' of every call." Opp'n at 9. To support this proposition, Nationstar relies on Maghen v. Quicken Loans Inc., No. 15-55684, 2017 WL 711088 (9th Cir. Feb. 23, 2017). Opp'n at 9. In Maghen, the Ninth Circuit affirmed the district court's summary judgment in favor of Quicken Loans because Maghen was deemed to have consented to the recording of calls because "he agreed to LendingTree's Terms of Use and that the Terms of Use stated that one of LendingTree's '200 Network Lenders' may contact him by phone on a recorded line." 2017 WL 711088, at *1. Quicken Loans was one of LendingTree's Network Lenders. Id. On that basis, Nationstar argues that "consent cannot be determined simply by considering whether a disclosure was given at the outset of the call," but instead requires individual consideration of "whether the borrower was informed [that] the call may be recorded from some other sources and whether the borrower exercised his right to decline to continue the conversation after being on notice that the call was recorded." Opp'n at 9–10.

Prior to the Ninth Circuit's decision in Maghen, a court in this district resolved a substantially similar case and addressed this issue. See Raffin v. Medicredit, Inc., No. 15-cv-4912-GHK-PJW, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017). As in Raffin, the parties' dispute "boils down to the correct interpretation of § 632.7." Id. at 7. This question appears to go the merits of the case and "courts must consider merits issues only as necessary to determine a pertinent Rule 23 factor, and not otherwise[.]" Stockwell v. City & Cty. of San Francisco, 749 F.3d 1107, 1113 (9th Cir. 2014). The Court must consider this question because it overlaps with the Rule 23 requirements. See Ellis v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|----------|------------------------|------|---------------|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) ("[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.  More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with the Rule 23(a) requirements."); Brown v. Electrolux Home Prod., Inc., 817 F.3d 1225, 1237 (11th Cir. 2016) ("[I]f a question of law bears on a requirement of Rule 23, then the district court must answer it.").  As the Court explained in Raffin, the correct interpretation of Section 632.7 bears on predominance because:

> If § 632.7 requires a defendant to provide a recording advisory before any conversation has begun, then the answer to Raffin's question is subject to common proof because all class members were subject to Medicredit's policy of not issuing a recording advisory until after it had gathered some personal information about the class member.  But if § 632.7 does not so require, then whether a particular class member gave consent will not depend on Medicredit's policy.  Rather, we would need to examine the surrounding circumstances of each call to determine whether consent was given.  This showing would involve individualized proof.

Raffin, 2017 WL 131745, at *7.  The Raffin court thus analyzed whether Medicredit's recording advisory comported with California law.  Id.

The Court finds persuasive the interpretation of Section 632.7 as set forth in Raffin.  First, Raffin compared Section 632.7 to Section 632, which is similar in structure to Section 632.7 and contains the same "without consent" language.  Id. at *7–8.  The California Supreme Court, interpreting Section 632, said:

> [T]his provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded.  If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to continue the communication.  A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

<u>Kearney v. Salomon Smith Barney, Inc.</u>, 137 P.3d 914, 930 (Cal. 2006).  "We see no reason why the California Supreme Court's interpretation would differ as to § 632.7 given the statutes' similarity.  Accordingly, we find this passage highly instructive in predicting how the California Supreme Court would interpret § 632.7."  <u>Raffin</u>, 2017 WL 131745, at *8; <u>see</u> <u>Tompkins v. 23andMe, Inc.</u>, 840 F.3d 1016, 1023 (9th Cir. 2016) ("When the state's highest court has not squarely addressed an issue, we must predict how the highest state court would decide the issue" (quotation marks omitted)).  As the <u>Raffin</u> court did, this Court "take[s] this passage to mean that § 632.7 prohibits recording of a conversation prior to informing the parties to the conversation that the conversation is being recorded [subject to certain statutorily defined exceptions].  In other words, to obtain a party's consent to record, a recording advisory must be given before the party's communication is recorded."  <u>Raffin</u>, 2017 WL 131745, at *8 (citation omitted).

The Court thus "conclude[s] that § 632.7 prohibits a defendant from recording a telephone conversation without first informing the parties to the conversation that the conversation is being recorded."  <u>Id.</u> at *9.  Plaintiffs have introduced evidence showing that Nationstar maintained a written policy and practice of beginning recorded calls and ascertaining personal information from individuals *before* providing a notice that the call was being recorded.  <u>See</u> Trompisz Depo. 66:5–73:11; dkt. 71-2, Declaration of Adrian R. Bacon, Ex. B ("Call Scripts").  Thus, Nationstar's recording policy did not comply with Section 632.7 during the Class Period.  "Because every putative class member was subject to this policy on a uniform basis, determining consent to record can be accomplished without resort to individualized proof."  <u>Raffin</u>, 2017 WL 131745, at *9.

Contrary to Nationstar's suggestion, <u>Maghen</u> affirms that individuals must be notified "at the outset of the conversation" that the call might be recorded.  <u>See</u> <u>Maghen</u> 2017 WL 711088, at *1.  The Ninth Circuit concluded that such notice had been given where the plaintiff had agreed that LendingTree's lenders could contact him by phone on a recorded line *and* a Quicken Loans employee called the plaintiff and "*immediately informed* Maghen that he worked for Quicken Loans and was calling about the refinancing inquiry Maghen had recently submitted online.  This information put Maghen on notice that Quicken Loans was one of LendingTree's Network Lenders."  <u>Id.</u> (emphasis added).  Thus, <u>Maghen</u> is consistent with <u>Raffin</u>'s conclusion that a party must be informed that the conversation is being recorded "at the start of a conversation, before any recording of another party's communication has taken place[.]"  <u>Raffin</u>, 2017 WL 131745, at *8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

  **b.**  **Consent**

  Nationstar argues that consent is an overwhelming individual issue for three reasons.  First, Nationstar argues that there is no way to determine whether an individual manifested consent to Nationstar's recording without listening to the more than 178,000 calls at issue.  Opp'n at 11; see NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc., No. 12-cv-01685-BAS-JLB, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) ("Consent may be express or may be implied in fact from the surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." (quotation marks omitted)).  In support of this argument, Nationstar points to Thomasson v. GC Services. Ltd. Partnership, 539 F. App'x 809 (9th Cir. 2013).  Opp'n at 11.  In Thomasson, the Ninth Circuit concluded that a determination as to whether the defendant violated the Fair Debt Collection Practices Act by failing to warn call members that their calls may be monitored "would require an individualized inquiry into hundreds of phone calls in order to determine whether and when any warning was given in each call."  539 F. App'x at 810.  However, the Thomasson court reached this decision because "[i]n the face of the evidence to the contrary submitted by Defendant, Plaintiffs did not and [could not] establish that Defendant acted *uniformly* as to each member of the class by relying on 18 anecdotal reports of individual telephone calls."  Id. (emphasis added).  In contrast to the facts in Thomasson, Nationstar does not dispute that, during the Class Period, Nationstar maintained a written policy and practice of beginning recorded calls and ascertaining personal information from individuals *before* providing a notice that the call was being recorded.  See Trompisz Depo. 66:5–73:11; Call Scripts.  Accordingly, during the Class Period, Nationstar's standard practice was to gather at least some personal information about the other party on an Outbound Call before issuing a recording advisory.  Therefore, there need not be an individualized inquiry into whether class members consented to being recorded because plaintiffs have introduced evidence that Nationstar acted uniformly as to each class member.[2]

---

[2] At oral argument, counsel for Nationstar argued that consent is an individual issue because the script was not always followed; some borrowers hung up immediately when Nationstar representatives called, while other borrowers interrupted the representatives during the script.  At trial, Nationstar may offer such evidence to in support of an argument that certain borrowers may not be members of the class.  However, "[i]n order to determine whether common issues predominate, the Court neither decides the merits of the parties' claims or defenses nor does it decide whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

Nationstar similarly argues that a determination of whether a warning was given at the "outset" of a conversation would require individual evidence. Opp'n at 16. In support of this argument, Nationstar reasserts that Section 632.7 does not require a disclosure on every call, let alone at the call's outset or within 30 seconds of its commencement. Id. at 17. The Court has already concluded, however, that a party must be informed that the conversation is being recorded at the start of a conversation, before any recording of another party's communication has taken place. See supra Section IV.A.1.a. Nationstar further contends that plaintiffs' method for determining whether the warning was given fails because it: (a) relies on an arbitrary 30-second cut-off; and (b) plaintiffs' proposed method of reviewing and transcribing the recorded calls would result in inaccuracies. See Opp'n at 16–21. However—as the Court has already noted—Nationstar maintained a written policy and practice of beginning recorded calls and ascertaining personal information from individuals *before* providing a notice that the call was being recorded. Thus, there is no need to rely on a 30-second cut-off or plaintiffs' proposed method for reviewing and transcribing the recorded calls.

Second, Nationstar argues that the trier of fact must consider each borrower's history of communications with Nationstar in order to determine whether the individual had impliedly consented to being recorded in the past. Opp'n at 11. Nationstar contends that individuals may have impliedly consented because (a) some individuals initiated calls to Nationstar and therefore received the automated disclosure of recording that was given on "Inbound Calls"; and (b) some borrowers, including plaintiffs, had received multiple Outbound Calls during which they were informed that the calls would be recorded. Id. at 13. The Raffin court recognized that a history of communications would require individualized inquiries:

> Whether and when a recording advisory was provided on a call will not
> necessarily determine whether consent was given if consent is either
> expressly or impliedly provided through prior calls. We would have to
> examine whether a class member had previously received a call and under

plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." Bradach v. Pharmavite LLC, No. 14-cv-3218-GHK-AGR, 2016 WL 7647661, at *5 (C.D. Cal. July 6, 2016) (quotation marks omitted). The Court finds that plaintiffs have demonstrated a plausible class-wide method of proof and have thus satisfied their burden on a motion for class certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

what circumstances. Such a task would generate individualized inquiries that would predominate over common questions, making class certification inappropriate.

Raffin, 2017 WL 131745, at *7. However, rather than deny the plaintiff's motion for certification, the Raffin court found that "this problem [could] be cured by narrowing the class definition to include only those claims relating to an individual's first recorded conversation with a Medicredit representative." Id.

Plaintiffs argue that such a narrowing of their class definition is not necessary in this case because the recording advisory in Raffin stated that "*all* calls may be monitored and/or recorded," 2017 WL 131745, at *7, whereas Nationstar's scripts use the phrase "[*t*]*his* call may be recorded for quality assurance purposes," see Call Scripts. Reply at 7–8 (emphases added). As a result, plaintiffs contend that individuals who received the recording notice during their first call with Nationstar had no reason to assume that they would be recorded in future calls. Reply at 8. In support of this proposition, plaintiffs rely on Kight v. CashCall, Inc., 200 Cal. App. 4th 1377 (2011) ("Kight I"), in which the California Court of Appeals found that a "call monitoring disclosure" stating "*This* call may be monitored or recorded for quality control purposes" does "not necessarily inform a borrower that this call *and all future calls* with [the creditor] may be monitored or recorded." Id. at 1399. In Kight I, the Court of Appeals reversed the trial court's summary adjudication order, finding the trial court's interpretation of California Penal Code § 632 inconsistent with the statute's language and purposes. However, plaintiffs fail to take note of the Kight case's subsequent history. On remand, the trial court decertified the class upon finding that individual issues predominated over common issues. See Kight v. CashCall, Inc., 231 Cal. App. 4th 112, 117 (2014) ("Kight II"). In Kight II, the Court of Appeals affirmed the lower court's decertification decision. Id. The Kight II court concluded that "[t]he determination whether an individual plaintiff had an objectively reasonable belief that his or her conversation with [the defendant] would not be recorded will require individualized proof of, among other things, 'the length of the customer-business relationship [and] the [plaintiff's] prior experiences with business communications . . . .'" Id. at 129 (quoting Hataishi v. First Am. Home Buyers Prot. Corp., 223 Cal. App. 4th 1454, 1467 (2014)). In Hataishi, a California Court of Appeals found that "Plaintiff's unique circumstances—including the fact that she had made approximately a dozen calls to First American during which she was told that the call 'may be monitored or recorded'—set[] her apart, for purposes of assessing the reasonableness of her expectations, from other customers who never heard the disclosure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

or heard it only a few times."   223 Cal. App. 4th at 1468.  In other words, as Nationstar asserts, "[t]he more calls the borrower had with Nationstar, and the more often the disclaimer was given without objection, the less likely it is that a borrower could prove lack of consent."  Opp'n at 13; see also Torres v. Nutrisystem, Inc., 289 F.R.D. 587, 593 (C.D. Cal. 2013) (Carney, J.) (finding that the factual inquiry into putative class members' call histories was likely to result in varying answers to the question of whether class members had an expectation of confidentiality).  The Court finds Kight II, Hataishi, and Torres persuasive and concludes that individual issues predominate among the putative class members of plaintiff's originally defined classes.

Nevertheless, the Court finds that "this problem can be cured by narrowing the class definition to include only those claims relating to an individual's first recorded conversation with a [Nationstar] representative."  See Raffin, 2017 WL 131745, at *7.  By allowing plaintiffs to narrow their class definition, plaintiffs' "proposed question will generate common answers because every such individual was exposed to [Nationstar's] uniform policy of recording a conversation without first informing the individual that the conversation was being recorded."  See id.  Nationstar, citing Costelo v. Chertoff, 258 F.R.D. 600, 604–05, argues that the Court should reject plaintiffs' belated request to amend their class definitions.  Dkt. 73 at 4 n.1.  However, courts routinely permit plaintiffs to *narrow* the scope of their class at the certification stage.  See, e.g., Raffin, 2017 WL 131745, at *7–9; Abdeljalil v. Gen. Elec. Capital Corp., 306 F.R.D. 303, 306 (S.D. Cal. 2015) (permitting plaintiff to narrow the class definition in a motion for class certification without amending the operative complaint because "the new definition is simply a narrower version of the class definition presented in the [operative complaint], which is allowable"); Wolf v. Hewlett Packard Co., No. 15-cv-01221-BRO-GJS, 2016 WL 7743692, at *8 n.4 (C.D. Cal. Sept. 1, 2016) ("Defendant, citing Costelo v. Chertoff, argues that this Court should not consider certification beyond the class definition provided in the operative complaint.  This Court is unpersuaded that consideration of the revised class definition in the Plaintiff's Motion is inappropriate.  The class definition proposed in the Motion is narrower than the definition in the operative complaint, and the Court finds no lack of diligence on the part of Plaintiff; thus the Court will consider the class definition in the Motion." (citation omitted)); Knutson v. Schwan's Home Serv., Inc., No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) ("While Plaintiffs' proposed class is narrower in scope than the class alleged in Plaintiffs' SAC, the proposed class still includes individuals that were allegedly called in violation of the same subsection of the TCPA.  The Court will thus go on to address the requirements for class certification.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|----------|----------------------|------|---------------|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

In their reply, plaintiffs have proposed the following revised class definitions:

IPA 632.7 Class: All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated in an outbound telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

IPA 632.7 First Call Subclass: All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated for the first time in an outbound telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

Reply at 12.  Consistent the with Court's analysis above, the Court finds that only the "IPA 632.7 First Call Subclass" eliminates the individual inquiry regarding class members' call histories.[3]  As a result, the Court will address the requirements of class certification using the IPA 632.7 First Call Subclass.

Third, Nationstar argues that, even if the class definition is narrowed as described above, the trier of fact would still have to consider whether each class member's monthly billing statements—which include a notice that customer service calls may be recorded—creates implied consent to being recorded.  Opp'n at 13, 16; see dkt. 54-10, Declaration of Kristen Trompisz, Exs. A–C.  In support of this argument, Nationstar again relies on Maghen, in which the Ninth Circuit concluded that an individual was deemed to have consented to the recording of calls because he agreed to Terms of Use that stated that the

---

[3] This revised class definition also resolves Nationstar's argument that plaintiffs' original class definitions constituted impermissible "fail-safe" classes.  See Opp'n at 26; Kamar v. RadioShack Corp., 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.").  Originally, class membership was dependent on a the adjudication of a merits issue because the original classes were limited to individuals whose calls were "recorded without their consent."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

defendant could contact him by phone on a recorded line. 2017 WL 711088, at *1. The Court notes that <u>Maghen</u> differs from the present case in that Maghen affirmatively agreed to Terms of Use that expressly disclosed that calls would be recorded, where as here, plaintiffs' billing statements do not constitute contracts to which they agreed. Nevertheless, even assuming that the monthly billing statements sufficed to notify customers that calls would be recorded, it appears that such statements were provided to *all* putative class members. Therefore, a determination as to whether such statements constituted sufficient notice of recording such that class members impliedly consented to being recorded can be accomplished without resort to individualized proof.

        c.     **Location**

      CIPA applies only to communications where at least one party to the call is located within California. <u>Carrese v. Yes Online Inc.</u>, No. 16-cv-05301-SJO-AFM, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) ("CIPA applies to the action, to the extent the Complaint asserts CIPA claims against a California defendant for alleged conduct that occurred in California."); <u>Bona Fide Conglomerate, Inc. v. SourceAmerica</u>, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (discussing how CIPA protects persons "within California"). Nationstar asserts that it has no offices in California and does not call borrowers from this state. Opp'n at 22. Nationstar argues that plaintiffs have failed to meet their burden of showing that they can prove with common evidence whether any borrower was in California when a call to his or her cellular telephone was placed. <u>Id.</u>

      The Court finds that it is "more likely than not that a person with a California area code will have been located in California at the time of the call." <u>Raffin</u>, 2017 WL 131745, at *3. As this Court has found in a prior case, "[t]o the extent that [Nationstar] has evidence that some of these calls were not recorded or were not placed from California or by the putative plaintiff, [Nationstar] can offer that evidence to disqualify class members. And district courts may narrow or decertify a class before final judgment." <u>See Ades v. Omni Hotels Mgmt. Corp.</u>, No. 2:13-cv-02468-CAS, 2014 WL 4627271, at *7 (C.D. Cal. Sept. 8, 2014). Nationstar argues that obtaining the cell site location information for each of the prospective class members is a "gargantuan task" that plaintiffs have not even begun to undertake. Opp'n at 22–23. But the Ninth Circuit has recognized that Rule 23 does not require plaintiffs "to satisfy an administrative feasibility prerequisite." <u>See Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1128 (9th Cir. 2017) ("The authors of Rule 23 opted not to make the potential administrative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL      'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|----------|------------------------|------|---------------|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs. We lack authority to substitute our judgment for theirs.").  However difficult it may be to obtain cell site location information for each class member, the Court finds that plaintiffs have identified a common method of proof that will allow plaintiffs to identify members of the class.

### d.      Calculating Damages

Though plaintiffs seek statutory damages, Nationstar contends that statutory damages of $5,000 per violation of Section 632.7 would be excessive.  Opp'n at 24–25.  Nationstar argues that the calculation of damages is not a common issue because Due Process review would require the Court to reduce the amount of damages in proportion to actual harm suffered by each class member.  Id. at 25.

As a general matter, when a proposed class seeks only statutory damages, this "involve[s] less stringent individualized inquiry."  Gold v. Midland Credit Mgmt., Inc., 306 F.R.D. 623, 633 (N.D. Cal. 2014).  Indeed, "[c]ourts have been more willing to find predominance where, as here, the class seeks only statutory damages."  In re Toys R Us-Delaware, Inc., 300 F.R.D. 347, 377 (C.D. Cal. 2013).  Furthermore, as this Court has found, "excessive damages are better addressed at a later stage of the litigation."  Ades, 2014 WL 4627271, at *14; see also Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified." (citation omitted)); Raffin, 2017 WL 131745, at *9 ("Medicredit's concerns regarding disproportionate and excessive damages are better addressed at a later stage of the litigation."); In re Napster, Inc. Copyright Litig., No. 00-cv-1369-MHP, 2005 WL 1287611, at *11 (N.D. Cal. June 1, 2005) ("[T]he conclusion that class action treatment might somehow influence the proportionality of a statutory damages award is logically flawed."); but see Campbell v. Facebook Inc., 315 F.R.D. 250, 269 (N.D. Cal. 2016) ("[M]any individual damages awards would be disproportionate, and sorting out those disproportionate damages awards would require individualized analyses that would predominate over common ones. . . .  [T]he decision about whether or not to reduce an excessive damages award would necessarily involve individual questions about whether each specific class member's award was excessive.  For that reason, the court finds that individual issues regarding damages would predominate over common ones[.]").  The Court remains persuaded that concerns about excessive damages are better suited to a later stage of litigation, when Nationstar can offer evidence to disqualify class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

### e.    Summary

In accordance with the foregoing, and upon the narrowing of the class to the First Call Subclass, the Court finds that plaintiffs have satisfied their burden of showing that common questions predominate.

### 2.    Superiority

In addition to a predominance of common questions, Rule 23(b)(3) requires a class proponent to demonstrate that the class action is superior to other methods of adjudicating the controversy. See Valentino, 97 F.3d at 1235 (explaining that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication"). A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." Id. at 1234. Rule 23(b)(3) provides the following non-exhaustive list of four factors to consider in this assessment:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (quotation marks omitted). District courts may also consider "other, non-listed factors," as the Ninth Circuit reiterated:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

Bateman v. Am. Multi–Cinema, Inc., 623 F.3d 708, 713 (9th Cir. 2010) (quotation marks omitted).

Plaintiff contends that a class action is superior because it would avoid a multiplicity of actions and possible inconsistencies in judgments and because the secretive nature of CIPA violations means that many absent class members would have no knowledge of their entitlement to bring an individual claim. Motion at 25. Nationstar argues that a class action is not superior because individual issues predominate over common questions and because the statutory remedy provides an adequate incentive for separate lawsuits by injured individuals. Opp'n at 33. The Court has already concluded that individual issues do not predominate over common questions. Furthermore, "the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification." Ades, 2014 WL 4627271, at *14. Therefore, the Court finds that plaintiffs have satisfied their burden of showing superiority.

**B.    Ascertainability**

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3)."). A class is sufficiently ascertainable if "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 593–94 (C.D. Cal. 2008). "A lack of ascertainability alone will generally not scuttle class certification." Red v. Kraft Foods, No. 10-cv-1028-GW-AGR, 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12, 2012).

Nationstar argues that it is not administratively feasibly to identify class members for four reasons. First, Nationstar contends "there is no way to determine whether any call was recorded absent the borrower's consent without conducting a detailed analysis of each borrowers' history of communications with Nationstar." Opp'n at 27. This effectively recapitulates Nationstar's predominance argument, which the Court has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

already found unpersuasive.  Second, Nationstar asserts that plaintiffs' proposed class is administratively infeasible because it depends on an expert's review of over 178,000 recorded calls that will be burdensome to download.  Id. at 27–28.  However, as described above, a review of all of the relevant calls is unnecessary to determine consent because Nationstar had a policy of obtaining personal information from borrowers before providing them with the recording notice.  Moreover, as noted above, Rule 23 does not require plaintiffs "to satisfy an administrative feasibility prerequisite."  See Briseno, 844 F.3d at 1128.  Third, Nationstar argues that plaintiffs fail to propose a reliable means of determining whether the recipient of a given call is the person to whom the phone number belongs.  Opp'n at 28.  Only a person who is a party to the call and was recorded without consent has suffered an injury and has standing to sue under Section 632.7.  Carrese, 2016 WL 6069198, at *4.  Nationstar contends that there is no way to determine the allegedly injured parties without individually reviewing each call.  Nationstar may be correct that determining the identity of the party on each recorded call will be administratively burdensome.  However, the Court again recognizes that Rule 23 does not require plaintiffs "to satisfy an administrative feasibility prerequisite."  See Briseno, 844 F.3d at 1128.  The Court thus declines to "scuttle class certification" on this basis of the difficulty in identifying whether the individual called is the person to whom the cell phone number bleongs.  Fourth, Nationstar argues that plaintiffs fail to address how they will identify whether the calls involved cordless telephones.  Opp'n at 28.  Any such problem has been remedied by the narrowing of the class to the First Call Subclass, which is comprised only of those individuals using a cellular device.

Accordingly, the Court does not find a lack of ascertainability to defeat class certification here.  Courts in this circuit have found it "enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."  McCrary v. The Elations Co., LLC, No. 13-cv-00242-JGB-OP, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014).  Plaintiffs limit the First Call Subclass to those who (a) received a call, (b) within a certain time period, (c) while located in a specific geographic area, (d) on a cellular phone, (e) for the first time, (f) from Nationstar's representative or agent, (g) who recorded the conversation, (h) without first informing the individual that the conversation was being recorded.  The Court finds that this definition sets forth objective characteristics sufficient to enable prospective class members to identify themselves.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

### C.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  "No exact number cut-off can be stated.  Rather, the specific facts of each case must be examined."  Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  "Courts have not required evidence of exact class size or the identities of class members to satisfy the requirements of Rule 23(a)(1)."  Saulsberry v. Meridian Fin. Servs., Inc., No. 14-cv-6256-JGB-JPR, 2016 WL 3456939, at *7 (C.D. Cal. Apr. 14, 2016) (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)).

Plaintiffs' expert, Jeffrey A. Hansen, estimates that there were 65,573 unique cellphone numbers called during the Class Period.  Dkt. 71-12, Declaration of Jeffrey A. Hansen ¶ 18.  Nationstar's expert, Margaret A. Daley similarly estimates that there were 67,306 unique numbers called during the class period.  Dkt. 61-1, Ex. C, Rule 26(A)(2)(B) Written Report of Margaret A. Daley ¶ 52.  Nationstar argues that plaintiffs fail to establish numerosity because they do not introduce evidence showing that any of those calls was recorded without the borrowers' consent.  Opp'n at 29.  However, as described above, plaintiffs have introduced evidence showing that Nationstar maintained a policy of recording Outbound Calls and obtaining personal information before providing a recording notice.  Even assuming Daley's estimate is correct, the Court finds that plaintiffs' allegations plainly suffice to establish numerosity.

#### 2.    Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class."  These common issues must be material to the resolution of the claims asserted and demonstrate that the putative class members "suffered the same injury."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982).  "[W]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  Dukes, 564 U.S. at 350 (quotation marks omitted).

Rule 23(b)(3)'s predominance inquiry is similar to, but "far more demanding" than, Rule 23(a)'s commonality inquiry and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., 521

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

U.S. at 623–24. In other words, "if plaintiffs show predominance, they necessarily show commonality." Ades, 2014 WL 4627271, at *8. In its opposition, Nationstar presents arguments about predominance alone, and does not address commonality. Because the Court has already concluded that plaintiffs have shown predominance, the Court necessarily finds that plaintiffs have satisfied Rule 23(a)'s commonality requirement.

### 3.     Typicality

Rule 23 next requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2). The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Costco, 657 F.3d at 984 (quotation marks omitted). Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Where a class representative is subject to unique defenses, typicality may not be satisfied. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement tends to overlap with the commonality and adequacy requirements. See Newberg on Class Actions (Fifth) § 3:30.

Nationstar argues that plaintiffs' claims are atypical because plaintiffs suffered only a bare procedural violation of Section 632.7 and, therefore, plaintiffs did not suffer an injury in fact sufficient to create Article III standing. Opp'n at 29–31. To establish an injury in fact sufficient to create Article III standing, a plaintiff must allege that he has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). In Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), the Supreme Court addressed the meaning of "concrete injury" as applied to a plaintiff seeking statutory damages. Id. at 1549. For an injury to be "concrete," it must be "de facto," meaning that it is "real," and not "abstract." Id. at 1548. However, intangible injuries may be concrete. Id. at 1549.

The Spokeo Court reaffirmed that Congress may "elevat[e]" injuries "previously inadequate in law" to legally cognizable "concrete" injuries. Id. (quoting Lujan, 504 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

at 578). That is, in some cases "a plaintiff need not allege any additional harm beyond the one Congress has identified." Id.; see also Warth v. Seldin, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (quotation marks omitted)). Justice Thomas, concurring in Spokeo, explained: "Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights," such that "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." Id. at 1553 (Thomas, J., concurring). However, not every harm recognized by statute will be sufficiently "concrete" to establish injury in fact. Id. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Moreover, "Article III standing requires a concrete injury even in the context of a statutory violation." Id.

After Spokeo most courts in this circuit have concluded that privacy violations under CIPA constitute a concrete harm. See, e.g., Bona Fide Conglomerate, 2016 WL 3543699, at *8 ("Compared to Spokeo, a violation of the CIPA involves more tangible rights than a technical violation of the Fair Credit Reporting Act of 1970 (FRCA). Whereas '[a] violation of one of the FCRA's procedural requirements may result in no harm,' such as reporting of 'an incorrect zip code,' a violation of CIPA implies a violation of privacy rights." (quoting Spokeo, 136 S. Ct. at 1549)); Carrese, 2016 WL 6069198, at *6 (finding that the allegation of a violation of CIPA is sufficient to confer standing without any independent allegation of injury); Raffin v. Medicredit, Inc., No. 15-cv-4912-GHK-PJW, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016) ("Following Spokeo, district courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute."); Matera v. Google Inc., No. 15-cv-04062-LHK, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016) ("[T]he judgment of Congress and the California Legislature indicate that the alleged violations of Plaintiff's statutory rights under the Wiretap Act and CIPA constitute concrete injury in fact. This conclusion is supported by the historical practice of courts recognizing that the unauthorized interception of communication constitutes cognizable injury."); Romero v. Securus Techs., Inc., 216 F. Supp. 3d 1078, 1089 (S.D. Cal. 2016) ("Rather than being a 'bare procedural violation,' a CIPA violation is 'the violation of a procedural right granted by statute . . . sufficient . . . to constitute injury in fact.'" (quoting Spokeo, 136 S. Ct. at 1549)). Nationstar, however, points to Nei Contracting & Engineering, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

Hanson Aggregates Pacific Southwest, Inc., No. 12-cv-01685-BAS-JLB-, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016), in which the district court found that the plaintiff lacked standing to pursue his claims under CIPA where evidence was presented that plaintiff admitted he would have consented to the recording if asked, did not object to the existence of the recorded call, and was injured because the recording was not provided to him sooner in the dispute. Id. at *5. As in Nei, Jessy Zaklit admitted that she would have consented to the recording of her calls had the disclosures been provided at the outset. Dkt. 61-1, Ex. B, Deposition of Jessy Zaklit at 18:13–18. Alfred Zaklit stated that he "couldn't say" whether he would have given Nationstar permission to record his call. Dkt. 61-1, Ex. A, Deposition of Alfred Zaklit at 35:20–36:1. Nevertheless the Court agrees with the reasoning in Osgood v. Main Street Mktg., LLC, No. 16-cv-2415-GPC-BGS, 2017 WL 131829 (S.D. Cal. Jan. 13, 2017), which found Nei "inapposite" to the instant circumstances. Id. at *7–8. In Nei, "[t]he plaintiff was not claiming an invasion of privacy injury but alleged injury because he did not keep records of the transactions at issue. Therefore, the district court found that the plaintiff lacked standing to pursue its claims under CIPA based on those facts." Osgood, 2017 WL 131829, at *7. As in Osgood, "[h]ere, Plaintiffs allege an invasion of privacy injury which is sufficient to confer Article III standing under Spokeo." Id. at *8. Accordingly, and consistent with the weight of authority, the Court finds that plaintiffs' have alleged a concrete injury sufficient to create Article III standing.

Nationstar further argues that even if plaintiffs suffered an injury in fact, they would lack standing to represent borrowers who did not receive *any* warning that their calls would be recorded. Opp'n at 31. The Court finds this argument unpersuasive. Whether class members received a late warning—like plaintiffs—or no warning at all, each putative class member suffered the precise harm that Section 632.7 was designed to guard against. Thus, the Court finds that plaintiffs' injuries are "reasonably co-extensive" with those of other putative class members. They allege a course of conduct by Nationstar common to the class, and privacy invasions typical to those of the class generally. Therefore, the typicality requirement is met.

### 4. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry involves whether "the named plaintiffs and their counsel have any conflicts of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that adequacy is met because they share the same interests as the other class members, who were harmed in the same way by Nationstar's practices, they are unaware of any conflict of interest and do not anticipate that a conflict will arise, and plaintiffs have obtained competent counsel experienced in class action litigation. Motion at 21. Nationstar contests adequacy on the ground that the plaintiffs' counsel, and not plaintiffs, are the driving force behind this action. Opp'n at 32–33. Nationstar contends that plaintiffs had no grievance with Nationstar's call recording procedures until after their attorneys recruited plaintiffs to file this case. Id. at 32. Nationstar asserts that the plaintiffs have no understanding of the claims they assert and "lack even a basic understanding of their attorneys' theory." Id. at 32–33.

It does not appear that plaintiffs have interests antagonistic to the class, and plaintiffs have offered evidence that they will prosecute the action vigorously. Even assuming that plaintiffs were solicited by counsel, that does not undermine a finding of adequacy. There is nothing inherently improper with the recruitment of class representatives. See Manual for Complex Litigation (Fourth) § 21.26; In re Vitamin C Antitrust Litigation, 279 F.R.D. 90, 108 (E.D.N.Y. 2012) ("In the past, the fact that class counsel had solicited a representative party to bring a class action was taken into consideration by courts making class certification determinations. However, this concern has waned in recent years and courts are now reluctant to give much weight to this factor in a class certification analysis." (citation omitted)). Moreover, even where solicitation of clients is improper under rules of professional responsibility, denial of class certification is not an appropriate remedy. Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1324 (11th Cir. 2008) (holding that, if class counsel had improperly solicited the class representative, "the ordinary remedy is disciplinary action . . . not denial of class certification." (quotation marks omitted)). Therefore, plaintiffs have established adequacy.

## V.      CONCLUSION

In accordance with the foregoing, plaintiffs' motion for class certification is **GRANTED**. The following class is certified:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 5:15-cv-2190-CAS(KKx) | Date | July 24, 2017 |
|---|---|---|---|
| Title | ALFRED ZAKLIT ET AL. v. NATIONSTAR MORTGAGE LLC | | |

All individuals who, from October 23, 2014 to May 2016, while physically present in California and using a cellular device with a California area code, participated for the first time in an outbound telephone conversation with a representative of Defendant or their agents who were recording the conversation without first informing the individual that the conversation was being recorded.

The Court **DENIES** as moot Nationstar's motion to exclude Borlin's testimony, declaration, and opinions.

IT IS SO ORDERED.

| | 00 | : | 20 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |