Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ALFRED ZAKLIT AND JESSY
ZAKLIT, individually and on behalf of
all others similarly situated,

    Plaintiffs,

    vs.

NATIONSTAR MORTGAGE LLC
and DOES 1 through 10, inclusive, and
each of them,

    Defendants.

**Case No.:** 5:15-CV-02190-CAS-KK

**<u>CLASS ACTION</u>**

**PLAINTIFF'S NOTICE OF
MOTION & MOTION FOR FINAL
APPROVAL OF CLASS
SETTLEMENT**

Assigned to the Hon. Christina  A. Snyder

**DATE:    AUGUST 19, 2019
TIME:     9:00 AM
COURTROOM: 8D**

---

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, August 19, 2019 at 9:00 a.m., before the United States District Court, Central District of California, Courtroom 8D, 350 W. 1st Street, Los Angeles, California 90012 (8th Floor) plaintiffs Alfred and Jessy Zaklit ("Plaintiffs") will move this Court for an order granting final approval of the class action settlement as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: June 27, 2019                   **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................1

II. STATEMENT OF FACTS......................................................................3

    A. Factual Background ........................................................................3

    B. Proceedings to Date ........................................................................3

    C. Statement of Facts ..........................................................................4

        1. The Settlement Class ..................................................................4

            a. The Settlement Class..............................................................4

            b. Class Membership Determination..........................................4

        2. Settlement Payment ...................................................................5

        3. Monetary Benefit to Class Members and Class Notice .............5

III. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL .........6

    A. CAFA Notice ..................................................................................6

    B. Direct Mail Notice Provided ..........................................................6

    C. Formal Notice Posted On The Settlement Website ..........................7

    D. Objections, Opt Outs, and Settlement Payouts ...............................8

        1. Settlement Checks and Credits ..................................................8

        2. Class Representative's Incentive Payment .................................8

        3. Attorneys' Fees and Costs .......................................................10

        4. Administrator's Expenses For Notice and Administration.......10

IV. ARGUMENT ......................................................................................11

    A. Final Approval of The Proposed Settlement Is Warranted. .........11

        1. The Strength of The Lawsuit And The Risk, Expense,
           Complexity, And Likely Duration of Further Litigation....13

        2. The Amount Offered In Settlement..........................................14

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

i

3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement .................................................... 15

4. The Extent of Discovery Completed .............................................. 16

5. The Experience And Views of Class Counsel ............................. 17

6. The Reaction of Class Members To The Settlement ................. 17

V. CONCLUSION ............................................................................................ 18

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

ii

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Cases**

3

*Bellinghausen v. Tractor Supply Co.*,

4

    306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ............................................................9

5

*Boyd v. Bechtel Corp.*,

6

    485 F. Supp. 610 (N.D. Cal. 1979)..................................................................19

7

*Buccellato v. AT&T Operations, Inc.*,

8

    No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ........11

9

*Detroit v. Grinnell Corp.*,

10

    495 F.2d 448 (2d Cir. 1974) ...............................................................20

11

*Ellis v. Naval Air Rework Facility*,

12

    87 F.R.D. 15 (N.D. Cal. 1980) .....................................................14, 20

13

*Girsh v. Jepson*,

14

    521 F.2d 153 (3d Cir. 1975) .....................................................................14

15

*Hanlon v. Chrysler Corp.,*,

16

    150 F. 3d 1011 (9th Cir. 1998) .................................................................10, 11

17

*In re Diamond Foods, Inc.*,

18

    2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) .........................................9

19

*In re Ferrero Litig.*,

20

    2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012)....................................14

21

*In re Global Crossing Sec. and ERISA Litig.*,

22

    225 F.R.D. 436 (E.D. Pa. 2000) ...................................................................17, 18

23

*In re Mego Fin'l Corp. Sec. Litig.*,

24

    213 F. 3d 454 (9th Cir. 2000).................................................................17, 18

25

*In re Omnivision Tech., Inc.*,

26

    559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ....................................................17

27

*In re Online DVD-Rental Antitrust Litigation*,

28

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iii

779 F.3d 934 (9th Cir. Feb. 27, 2015) ...................................................10

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*

*(FACTA) Litigation*,

295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ...........................................10

*In re Veritas Software Corp. Sec. Litig.*,

396 Fed. App'x 815, 816 (3d Cir. 2010) .............................................10

*In re Warner Communications   Sec. Litig.*,

618 F. Supp. 735 (S.D. N.Y. 1985) .......................................14, 19, 20

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d

935 (9th Cir. Cal. 2011) ........................................................................15

*Linney v. Cellular Alaska Partnership*,

151 F.3d 1234 (9th Cir. 1998) .............................................................19

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,

671 F.Supp. 819 (D. Mass. 1987)....................................................14, 20

*Maghen v. Quicken Loans Inc.*,

680 F. App'x 554 (9th Cir. 2017) ...........................................................4

*National Rural Tele. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) ..............................................14, 17, 18

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,

688 F.2d 615 (9th Cir. 1982) ................................................................13

*Radcliffe v. Experian Info. Solutions, Inc.*,

2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013) .........................11

*Raffin v. Medicredit, Inc.*, Case No.

CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11, 2018) .......11

*Rodriguez v. West Publishing Corp.*,

563 F.3d 948 (9th Cir. 2009) ...............................................................14

*Silber v. Mabon*,

18 F. 3d 1449 (9th Cir. 1994)...............................................................17

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iv

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) .................................................................13

*Steinfeld v. Discover Fin. Servs.*,

   2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...................21

*Torrisi v. Tucson  Elec. Power Co.*,

   8F.3d 1370 (9th Cir. 1993) .................................................................12

*Wilson v. Airborne, Inc.*,

   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) .................8

**Statutes**

California Invasion of Privacy Act

   Cal. Penal Code § 632.7 ...............................................................1, 2, 3

**Other Authorities**

2 Newberg on Class Actions

   (4th Ed. & Supp. 2002)........................................................................18

David R. Hodas, Enforcement of Environmental Law in A Triangular Federal

   System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by

   the United States, the States, and Their Citizens?,

   54 Md. L. Rev. 1552 (1995) .................................................................2

Manual for Complex Lit., Fourth............................................................18

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

v

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

Plaintiffs, Alfred and Jessy Zaklit (hereinafter referred to as "Plaintiffs" or "Class Representatives"), individually and on behalf of the "Settlement Class" (as defined below) hereby submit their Motion for Final approval of the proposed settlement (the "Settlement") of this action (the "Action").[1]  Defendant, Nationstar Mortgage LLC.  (hereinafter referred to as "Defendant" or ) does not oppose Plaintiffs' Motion.[2]  This Settlement provides for significant monetary relief for Class Members allegedly harmed by Defendant's alleged violations of  violated The California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. ("IPA"), which Settlement merits final approval by the Court. The settlement agreement ("Settlement Agreement" and/or "Agreement" and/or "Agr.") provides for a considerable financial benefit of $6,500,000 ("Settlement Fund") to the approximately 62,479 Settlement Class Members.

The Settlement Fund to be paid by Defendant is an all-in, non-reversionary payment.  Under the Settlement, each Class Member who submitted a claim will receive a pro rata award from the Settlement Fund.  Class Members are required to submit a claim form in order to receive payment, and receive a pro rata share of the settlement based on the number of claims filed.  The Class Members were informed of the Settlement by Direct Mail notice, and by the Long Form Notice posted on the Settlement Website.

Due to the economics of individually suing for minimal statutory damages of $5,000, few of the Class Members would likely be able to obtain such recovery on their own.  Currently, after subtracting the attorneys' fees and costs, the incentive award to the Class Representative, and the administrative costs from the Settlement

---

[1] Plaintiffs and Defendant are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this Memorandum are intended to have the meaning ascribed to those terms in the Agreement.

Fund, each of the Class Members who submitted a valid claim form is entitled to a Settlement Payment, in the amount of approximately $380.39. Friedman Decl ¶39.[3]

This Settlement also creates an incentive for Defendant and other businesses to comply with the IPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See* David R. Hodas, Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

Under the proposed settlement, reached with the guidance of Judge Meisinger, and which was already granted preliminary approval of this Honorable Court, Defendant will contribute $6,500,000 towards a common fund, which will be comprised of cash distributions to Settlement Class Members, Attorneys Fees, and Costs of Suit. Settlement Class Members were required to submit a claim form to participate in the Settlement. Defendant was in possession of information relating to Class Member identities, names, addresses, and phone numbers, and has provided this information to Epiq Systems, Inc. ("Epiq" and/or the "Claims Administrator").

The settlement that has been negotiated by Class Counsel is an outstanding result for the Class, given that Class Members who made claims will be getting $380.39 and damages under the IPA are $5,000. This represents a significant

---

[3] This sum is calculated by starting with the Common Fund of $6,500,000, subtracting class counsel's fees of $2,145,000, subtracting class counsel's costs of $25,046.52, subtracting the cost of notice at $194,499, subtracting the incentive awards of $20,000, and dividing the remainder ($4,115,454.48) by the 10,819 Class Members who submitted valid Claims. This is a truly outstanding figure, given that the statutory damages are $5,000, that there were serious challenges to the case as demonstrated by Defendant's position, and that this result was achieved on a class-wide basis.

recovery for Class Members  The strength of this settlement is further evidenced by the fact that to date, Epiq has received **only two valid opt outs and zero objections to the settlement, while reaching 98% of Class Members with Direct Mail Notice, in addition to Publication Notice**.  Declaration of Cameron Azari ("Azari Decl.") at ¶¶ 10-26.  This is an outstanding settlement that should be given final approval.  There is no reason for any other result to be reached.

## II.    STATEMENT OF FACTS
### A.    Factual Background

Nationstar is a servicer of home mortgages. Plaintiffs' operative Complaint alleges that Nationstar violated The California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. ("IPA") during every outgoing call, by recording consumers' communications without telling them they are doing so at the outset of the conversation.   Plaintiffs contend they and the Class are entitled to statutory damages pursuant to the IPA.  Defendant has vigorously denied and continue to deny that it violated the IPA, and denies all charges of wrongdoing or liability asserted against them in the Action.

### B.    Proceedings to Date

Plaintiffs' Complaint was filed on October 23, 2015, alleging violations of the IPA.  Plaintiffs' claims stemmed from a recorded phone calls made by Defendant that took place In October and November of 2014.  The Parties engaged in written discovery.  Defendant produced all policies and procedures relating to recording practices, advisory practices, training for representatives, call scripts, and IVR automated messages, as well as all documents relating to Plaintiff's collections file.

Plaintiffs moved to compel further production of documents comprising of two categories: 1) the outbound dial list showing all recorded calls placed by Defendants; and 2) recordings of California area code calls with Defendants during the class period alleged in the Complaint.  Thereafter, both parties entered

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

3

into an agreement regarding discovery and Plaintiffs withdrew their Motion to Compel.  Plaintiffs filed for Certification on December 12, 2016.  During the pendency of certification, the Parties attended mediation which was unsuccessful. Thereafter, the Class was certified.

Defendant then sought an appeal under Rule 23(f), premised largely on *Maghen v. Quicken Loans Inc.*, 680 F. App'x 554 (9th Cir. 2017), which was denied by the Ninth Circuit.   Thereafter Plaintiffs filed a Motion for Approval of Class Notice Plan, which was also approved by the Court.

The Parties attended a second mediation with the Hon. Louis M. Meisinger, Ret. of Signature Resolution on April 27, 2018.  The Parties did not resolve the case at the mediation on April 27, 2018, but subsequently resolved the matter a few months later thereafter via Judge Meisinger.    Through his guidance, this Settlement was reached.  This Honorable Court granted Preliminary Approval on March 4, 2019.  Dkt. No. 120 .

### C.   Statement of Facts

#### 1.   The Settlement Class

##### a.   The Settlement Class

The "Settlement Class" is defined in the Agreement as follows:

> *"All individuals who, from October 23, 2014 to May 1, 2016, while physically present in California and using a cellular device with a California area code, participated for the first time in an outbound telephone conversation with a representative of Defendant or its agent who were recording the conversation without first informing the individual that the conversation was being recorded." (Agreement § 2.1)*

##### b.   Class Membership Determination

The Settlement Class consists of all persons who were called by Nationstar during Class Period, as stated above.  Based on data confirmed by Defendant and

1  their counsel, the number of unique cell phone numbers is approximately 62,479.

2  This data was confirmed by Plaintiff via discovery.

3  ## 2.   Settlement Payment

4  Under the Proposed Settlement, Defendants agree to establish a Settlement

5  Fund in the amount of $6,500,000 (Agreement § 4.1) in order to fund the

6  following:  (1) providing notice to Class Members; (2) providing settlement checks

7  to Class Members entitled to receive a settlement check; (3) creating and

8  maintaining the Settlement Website; (4) maintaining a toll-free telephone number;

9  (5) providing CAFA notice (Agreement § 8.3) (6) to pay the proposed $10,000

10  Service Awards to the Plaintiffs (Agreement § 7); and (7) payment of the proposed

11  Attorneys' Fees of $2,145,000 (33% of the Settlement Fund) and litigation costs of

12  up to $100,000 (Agreement § 6).[4]   Any funds remaining after payment of all

13  settlement costs and Payments to the Settlement Class shall be paid to a recipient

14  to be selected by the Court.   Plaintiff proposes the Public Justice Foundation.

15  (Agreement § 15.6.).

16  The amount of the Settlement Fund shall not be reduced as a result of any

17  member(s) of the Settlement Class electing to opt out or be excluded from the

18  Settlement or for any other reason.  (Agreement § 4.4).

19  ## 3.   Monetary Benefit to Class Members and Class Notice

20  The Settlement Agreement provides for $6,500,000 in cash benefits (minus

21  Settlement Costs, attorney's fees, and litigation costs) to Class Members on a pro

22  rata basis after the claims period.  There are approximately 62,479 Class Members

23  with unique cell phone numbers that received calls from Nationstar.  Pursuant to

24  the Agreement, the Claims Administrator provided notice first via First Class U.S.

25  Mail on April 3, 2019.  (Agreement § 9,1,4.); Azari Decl. ¶¶ 11.   Claims Forms

26  were also made available on the Settlement Website.  Epiq also gave notice by

27

---

28  [4] Actual litigation costs are approximately $23,000, which means the Class will receive **more** than they were informed they would receive in the Notice.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

5

Publication Notice and banner advertising on the Internet.  (Agreement § 9.3); Marquez Decl. at ¶¶ 10-26.

The Claims Period ends July 5, 2019, which is 120 days after the Preliminary Approval Order was issued.  (Agreement § 10.2.1), and the opt out and objection deadline is set for July 5, 2019. Dkt. No. 120.  To date, there have been 19,819 Claims made.  Azari Decl. ¶ 27.  The Class Members who file a Claims Form and do not Opt Out and/or Object will each receive a pro-rata share.  After fees, costs and administration expenses, it is estimated there will be approximately $4,115,454.48 in available funds in the Net Settlement Fund to be distributed to the Class.  Each class member who submitted a claim will receive approximately $380.39.  Friedman Decl. ¶¶ 38-39.

## III.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Claims Administrator's compliance is described below.

### A.   CAFA Notice

The CAFA notice was mailed by Defendant in compliance with the § 3.4 of the Settlement Agreement.  Dkt. No. 108-2 Ex. B.  Counsel have received no communications from any state Attorney Generals' Offices.

### B.   Direct Mail Notice Provided

Epiq complied with the notice procedure set forth in the Preliminary Approval Order.  Dkt. No. 120.  As required by the Preliminary Approval Order, Epiq mailed individual postcard notices by direct mail to the settlement Class Members that included a summary of the Settlement's terms.  Azari Decl. at ¶ 10-14, Ex 2-3.  The direct mail notice also informed the Class Members of the Settlement Website address: (www.CallRecordingsSettlement.com) and the Claims Administrator's toll-free telephone, where Class Members could obtain further information about the Settlement and also make a claim.  *Id*. at ¶¶ 20-24.  As part of the preparation for mailing, all names and addresses contained in the

Class were processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the Notice postcard. *Id*. at ¶ 13. To the extent an updated address for an individual identified as a Class Member was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id*.

Defendant provided data to Epiq containing names, addresses and phone numbers of individuals who provided their information to Defendant who were called and recorded by Defendant. *Id.* at ¶ 10. This data contained information that was used by Epiq to send out 53,512 mail notice postcards. *Id.* at ¶ 11. As of today, 831 of these Notice and Claim Forms remain undelivered, which equates to approximately 98% reach of the Potential Class Members by direct mail. *See* Azari Decl. at ¶¶ 10-14. Notice was also given by way of publication in USA Today and banner ads on the google Display Ad Network and Facebook, generating 12 million impressions. *Id*. at ¶¶ 15-24, Exs. 4-7. Looked at another way, approximately 98% of the Class Members for whom address information was available were sent direct mail notice, not even including publication notice, which clearly satisfies due process. *See e.g.*, *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

## C.   Formal Notice Posted On The Settlement Website

In compliance with the Preliminary Approval Order, Epiq posted on the Settlement Website the detailed and full notice in a question and answer format, the approval papers and fee request papers, the settlement agreement, and the long form notice. Azari Decl. at ¶ 20.[5] The Settlement Website provided notice of the

---

[5] This Motion and Plaintiffs' Fee Petition are being posted to the website immediately after their filing.

proposed Settlement to the Class Members, in addition to the Direct Mail Notice.

### D.   Objections, Opt Outs, and Settlement Payouts

Class Members were provided no less than 90 days to review the Settlement, make timely opt outs and objections. As of the date of filing, Epiq has reported that, to date, there were two opt outs and zero objectors to the Settlement. Azari Decl. at ¶ 26. The current deadline to submit a Request for Exclusion or Object is July 5, 2019. *Id.*[6] The fact that there were not only zero objections, but only two opt outs, out of 62,479 Class Members highly supports the adequacy of the proposed Settlement. *Id. See In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 1.   Settlement Checks and Credits

The net Settlement Fund available to pay Class Members is $4,115,454.48, which was determined by subtracting the anticipated Class Representative incentive awards of $20,000.00, Class Counsels' requested fees of $2,145,000, Class Counsels' litigation expenses of $25,046.52, and the Settlement Administration costs (estimated to be no more than $194,499 after completion) from the Settlement Fund of $6,500,000. Friedman Decl. ¶¶ 35-39. This sum was divided by the 10,819 valid claims submitted by Class Members. Based on the available net Settlement Fund and, this equates to each Claimant receiving approximately $380.39. Friedman Decl. ¶ 39.

### 2.   Class Representative's Incentive Payment

District Courts in California have opined that in many cases, an incentive

---

[6] The Parties have requested a continuance of this deadline to July 30, 2019. See Dkt. No. 121.

award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this district, a $5,000 payment is presumptively reasonable. *See also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-43 (9th Cir. Feb. 27, 2015) (finding that the District court did not abuse its discretion in approving settlement class in antitrust class action, despite objector's contention that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) (finding that Request for recovery of $5,000 incentive award for each named plaintiff in consumers' action against children's toy retailer alleging retailer violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more than the last four digits of consumers' credit card numbers on customer receipts, was reasonable; parties' settlement agreement provided for incentive payments of $5,000 to each named plaintiff, those awards were consistent with the amount courts typically awarded as incentive payments).  Incentive awards of $15,000-$20,000 have been found to be reasonable. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011); *Raffin v. Medicredit, Inc*., Case No. CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11, 2018) (preliminarily approving a $15,000 incentive award, and later granting the award at final approval).

Pursuant to the Agreement and the Preliminary Approval Order, and subject to Court's final approval, Defendant has agreed that the Plaintiffs may be paid from the Settlement Fund an incentive award of up to $10,000 per Plaintiff, in recognition of Plaintiffs' service as the Class Representative.  Agr. § 7.  The Court

should approve the $10,000 incentive payment to compensate Plaintiffs for their time and efforts in litigating this case on behalf of the Class because it is in in line with the Ninth Circuit's directives in *Radcliffe v. Experian Info. Solutions, Inc.*, 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013). Plaintiffs' efforts in this litigation are outlined in Plaintiff's declarations, filed contemporaneously herewith in support of Motion for Attorneys' Fees and Costs and Incentive Award. Plaintiffs acted dutifully in their role as class representatives, and should be awarded this reasonable sum of $10,000 per Plaintiff, for their parts in the litigation.

### 3.   Attorneys' Fees and Costs

The Agreement permits Class Counsel to file an application for attorneys' fees, not to exceed 33% of the Settlement Fund (the benchmark in the Ninth Circuit is 25%, *Hanlon*, 150 F.3d at 1029), as well as litigation costs to be paid from the Settlement Fund, not to exceed $100,000. Agr. § 6. That amount of Attorneys' fees requests ($2,145,000) and litigation costs ($23,973.02) sought to date by Class Counsel is explained in more detail in Plaintiff's Fee Brief, filed contemporaneously herewith. The Court should approve the award of the requested attorneys' fees and costs to compensate Class Counsel for their time and efforts in litigating this case on behalf of the Class and the named Plaintiffs, having obtained great results for the Class.

### 4.   Administrator's Expenses For Notice and Administration

Defendant has agreed to pay all costs of notice and claims administration from the Settlement Fund up to an amount of $200,000. As of August 31, 2018, Epiq's costs and expenses had been $160,674.63. Azari Decl. at ¶ 31. Epiq will provide a supplemental declaration in support of these costs in advance of the approval hearing, once the claims period has closed.

///

## IV.   ARGUMENT

### A.   Final Approval of The Proposed Settlement Is Warranted

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied. *See generally* Preliminary Approval Order, Dkt. No. 197. The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate. Since preliminary approval, Plaintiff has continued to serve as an adequate Class Representative by reviewing documents and submitting declarations in support of motions, including the present motion; and Plaintiff supports final approval of the proposed settlement. Moreover, Class Counsel have also continued to adequately represent the interests of the Class Members and the named Plaintiff, having, among other things, timely disseminating Class Notice, communicating promptly with class members who contacted class counsel with questions, filing the Fee Brief, and assisting with settlement administration.

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of

the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F.Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Liti*g., 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved. Notably, this Settlement was reached with the assistance of experienced mediator Hon. Louis M. Meisinger (Ret.), which

shows a lack of collision between the Parties.  *See Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig*.), 654 F.3d 935, 948 (9th Cir. Cal. 2011). Based on the facts of this case, Class Counsel and the named Plaintiff agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial.  Friedman Decl., ¶¶ 21-43.

### 1. The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation

Defendant Nationstar has vigorously contested the claims asserted by Plaintiff in this Litigation, which has been in litigation for almost four years. While both sides strongly believed in the merits of their respective cases, there are risks to both sides in continuing the Litigation.  Friedman Decl. at ¶¶ 22-24.  In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Preliminary Approval.  *Id.* at ¶ 25.  Similarly, Nationstar believes that it has strong and meritorious defenses not only to the action as a whole, but also as to class certification and the amount of damages sought.

In considering the Settlement, Plaintiff sand Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have.  Friedman Decl. at ¶ 24.  As a result, Class Counsel supports the Settlement and seeks its Final Approval.  *Id*. at ¶¶ 3, 25.  The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the IPA. What is more, Judge Meisinger, who is intimately familiar with the instant litigation as well as the current climate of IPA litigation as a whole, agrees with the parties.

## 2.     The Amount Offered In Settlement

As set forth above, Defendant has agreed to a common fund settlement in the amount of $6,500,000.  After administration costs, proposed attorney's fees, costs of suit, and the proposed incentive award, Settlement Class Members will collectively receive at least $4,115,454.48 of these available funds.  The amount of the check shall be calculated by the Claims Administrator on a pro-rata basis, which currently equates to approximate recoveries of $380.39 per Class Member who submitted a valid Claim.  Friedman Decl. ¶¶ 38-39.

Class Member data provided to the Claims Administrator in the course of disseminating Notice verifies that the Class is comprised of 62,479 unique individuals.  The net recovery, after fees and costs, to each Class Member will be approximately $380.39 for each Class Member who submits a valid claim form. This is a highly favorable per-person recovery for the Class.   Moreover, this outstanding result was achieved without having to subject Settlement Class members to the substantial risks ahead in litigation, which include having to fight class decertification.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the IPA, the limitations of class-wide liability, and in light of the anticipated risk, expense, and uncertainty of continued litigation.  Although it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial, here, the Settlement provides significant and meaningful relief that is comparable to what the Class Members would receive if Plaintiff was able to prevail on class certification, took the case to trial and obtained a judgment.[7]  Moreover, Class Members were able to

---

[7] *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate

avoid the time, expense and risk  associated with bringing their own individual IPA action, where they would be anticipated to receive a sum on the lower end of the $5,000 in statutory damages awardable under the IPA.

### 3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabo*n, 18 F. 3d 1449, 1454 (9th Cir. 1994). Final approval of the Settlement should be granted when considering the terrific notice provided to the Class Members, i.e., 98% of the Class Members for whom address information was available successfully received direct mail notice, and notice was also given by publication in USA Today, and ads on Facebook and Google Display Ad Network, generating 12 million adult impressions.  *See* Azari Decl., ¶¶ 15-19.

It is also noteworthy that the settlement received highly positive responses from Class Members, as illustrated by lack of objections and just two opt outs. Moreover, it is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery.  *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not,

---

does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery). Again, despite this general acceptance, the settlement at issue here results in the Class receiving comparable relief to what they would potentially be able to receive in a judgment. It is an outstanding settlement in every respect.

The Claims Administrator sent postcard notice to 53,512 potential Class Members, identified by Defendant's records (explained above) All but a small percentage of Class Members were reached, ultimate resulting in 98% of Class Members having received direct mail notice of the settlement. *Id.* at ¶¶ 10-14. This was excellent notice and the best notice practicable for the Class Members.

### 4.    The Extent of Discovery Completed

The proposed Settlement is the result of intensive arms-length negotiations, which included several months of discovery into the nature of the practices, and the size of the Class affected by them. The parties also engaged in a full-day mediation session before Hon. Louis Meisinger. Prior to the mediation, the Parties engaged in both formal and informal discovery surrounding Plaintiffs' claims and Defendant's defenses. The Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic conferences, which ultimately resulted in a general understanding of the Settlement terms.

The important information needed in these cases is primarily how many Class Members' were subjected to the practices at issue. This information was obtained through both formal and informal discovery. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745.

Considering that the main disputed issues between the Parties are legal (i.e., did Defendant's failure to provide notice of recording violate the IPA? Is a class

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

action maintainable under Fed. R. Civ. P. 23?), and not factual in nature, the Parties have exchanged sufficient information to make an informed decision about settlement.  See *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

### 5.    The Experience And Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and an adequate settlement of the litigation. Friedman Decl., ¶¶ 13-26.  Class Counsel are experienced consumer class action lawyers.  This Settlement was negotiated at arms' length by experienced and capable Class Counsel who now recommend its approval. Friedman Decl. ¶¶ 13-25.  Moreover, the Settlement was reached after the assistance of Judge Meisinger (Ret.).  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.  Friedman Decl., ¶¶ 22-25.

### 6.    The Reaction of Class Members To The Settlement

The fact that there are now zero objections, and two valid opt outs from the approximately 62,479 Class Members, should say all that needs to be said about the outstanding settlement that was reached here for the Class.  *See Detroit v.*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

1  *Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F.

2  Supp. at 746; *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21

3  (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class

4  members, and 239 out of the approximately 8 million class members chose to opt

5  out). There has been absolutely zero resistance to the Settlement. Friedman Decl.

6  at ¶¶ 31-33; Azari Decl. at ¶¶ 26-27. Moreover, there was an over 17% take rate

7  on this case, which is higher than typical in these types of cases, and indicates that

8  Class Members were very interested in receiving settlement benefits. Friedman

9  Decl. ¶¶ 31-33; Azari Decl. at ¶¶ 26-27.

10  **V.    CONCLUSION**

11      In sum, the Parties have reached this Settlement following extensive arms'

12  length negotiations, including with the assistance of Judge Louis Meisinger (Ret.).

13  The Settlement is fair and reasonable to the Class Members who were afforded

14  notice that complies with due process.  For the foregoing reasons, Plaintiff

15  respectfully requests that the Court:

16  - Grant final approval of the proposed settlement;

17  - Order payment from the settlement proceeds in compliance with the Court's

18    Preliminary Approval Order and the Agreement;

19  - Grant the Motion For Attorney's Fees, Costs, and Incentive Payment;

20  - Enter the proposed Final Judgment and Order of Dismissal With Prejudice

21    submitted herewith; and,

22  - Retain continuing jurisdiction over the implementation, interpretation

23    administration and consummation of the Settlement.

24  Date: June 27, 2019                    **The Law Offices of Todd M. Friedman,
                                            PC**

25

26                                      By:  _/s/ Todd M. Friedman
                                            Todd M. Friedman
27                                          Adrian R. Bacon
                                            *Attorneys for Plaintiffs*
28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
18

## **CERTIFICATE OF SERVICE**

Filed electronically on this 27th day of June, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 27th day of June, 2019, to:

Honorable Judge Christina A. Snyder
United States District Court
Central District of California

And all Counsel of Record as recorded on the Electronic Service List.

s/Todd M. Friedman
Todd M. Friedman, Esq.