Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiffs*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ALFRED ZAKLIT AND JESSY
ZAKLIT, individually and on behalf of
all others similarly situated,

Plaintiffs,

vs.

NATIONSTAR MORTGAGE LLC
and DOES 1 through 10, inclusive, and
each of them,

Defendants.

**Case No** 5:15-CV-02190-CAS-KK

**CLASS ACTION**

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES COSTS AND INCENTIVE AWARDS**

Assigned to the Hon. Christina  A. Snyder

**DATE:    AUGUST 19, 2019**
**TIME:    9:00 AM**
**COURTROOM: 8D**

 [Filed and Served Concurrently with Declaration of Todd M. Friedman; Declarations of Alfred and Jessy Zaklit [Proposed] Order]

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, August 19, 2019 at 9:00 a.m., before the United States District Court, Central District of California, Courtroom 8D, 350 West First Street, Los Angeles, CA 90012, plaintiffs Alfred Zaklit and Jessy Zaklit ("Plaintiffs") will move this Court for an order granting Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive awards, as detailed in Plaintiffs' Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: June 27, 2019

**The Law Offices of Todd M. Friedman, PC**

By: _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................2

II. STATEMENT OF FACTS.........................................................................4

    A. Factual Background ..............................................................................4

    B. Proceedings to Date .............................................................................4

III. ARGUMENT .............................................................................................5

    A. The Requested Fee Award Is Fair, Reasonable And Justified........5

        1. The requested fees resulted from arm's length negotiations ......6

        2. The requested fees are reasonable, fair, and justified  under the
            percentage-of-the-fund method .................................................7

            a. Class Counsel have obtained excellent results for the Class
                in comparison to awards made in similar cases..............8

            b. The risks of litigation support the requested fees................10

            c. The skill required and quality of work performed support
                the requested fees.............................................................11

            d. Class Counsels' undertaking of this Action on a
                contingency-fee basis supports the requested fees.........12

        3. The requested fee is reasonable, fair, and justified under the
            lodestar method.......................................................................14

            a. Class Counsels' lodestar is reasonable.................................15

            b. Class Counsels' hourly rates are reasonable.......................17

    B. The Requested Costs Are Fair And Reasonable...........................18

IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE

AWARD ..........................................................................................................19

1

**V. CONCLUSION**...............................................................................................**20**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) .19

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................17

*Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at
 *4 (N.D. Cal. June 30, 2011)................................................................20

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) ..........17

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ....................7

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex.
 Dec. 18, 2001) ................................................................................16

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002)...................16

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)14, 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................3, 6, 14

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) .....................................17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................8

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1998)..............................8

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) .................16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............6

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........18

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996).............18

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ...............................5

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..........8, 10, 11, 14

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. Feb. 27,
 2015)..........................................................................................19

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act
 (FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ........................20

*In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) 20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th  Cir.

1994) ....................................................................................................13

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .............................15

*Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ....................................................................................6

*Maghen v. Quicken Loans Inc.*, 680 F. App'x 554 (9th Cir. 2017).........................5

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J.  Sept. 14, 2009) .........6

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)..............................18

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982 ..................................................................6

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) .17

*Raffin v. Medicredit, Inc.*, Case No. CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11, 2018) ....................................................................20

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ......................................................................................7

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) .................................................................17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................ passim

**Statutes**

Cal. Penal Code § 630 et seq. ...................................................................................4

California Invasion of Privacy Act – Cal. Penal Code § 632.7 ................................4

**Other Authorities**

2 McLaughlin on Class Actions (8th ed.)..................................................................7

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) ................8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................3, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendants do not oppose this motion.

Date: June 27, 2019

**The Law Offices of Todd M. Friedman, PC**

By: */s/ Todd M. Friedman*
     Todd M. Friedman
     *Attorneys for Plaintiffs*

---

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff moves the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (see Dkt. No. 120) between plaintiffs Alfred and Jessy Zaklit ("Plaintiffs") and defendant Nationstar Mortgage LLC, (hereinafter referred to as "Defendant" or "Nationstar"). [1]   Defendant does not oppose this Motion.   The Settlement Agreement provides for a substantial financial benefit of $6,500,000 ("Settlement Fund") to the approximately 62,479 Settlement Class Members.   Dkt. No. 108-1 Ex. A Settlement Agreement ("SA" or "Agr.") §§ 1.30, 4.1-4.5;[2] Declaration of Todd M. Friedman In Support of Motion for Fees ("Friedman Decl") at ¶ 4.   The $6,500,000 Settlement Fund to be paid by Nationstar is an all-in, non-reversionary payment.   After the Settlement Costs are deducted from the Settlement Fund, including the attorney's fees and costs, claims administration costs and incentive award, the amounts remaining will be available to pay all Approved Claims.   *Id*. at § 5.   Each Class Member who submits a valid claim form will receive a pro-rata award from the Settlement Fund.   *Id*. at § 5.   The agreement also provides that Defendant will pay all of the following: (1) all settlement administration costs, up to $194,499,000; (2) attorney's fees in an amount not to exceed 33% of the Settlement Fund (SA § 6); and (3) litigation costs up to $100,000.00.   *Id at 7*. These fees and expenses will be paid from the $6,500,000 Settlement Fund.

On March 4, 2019, the Court granted preliminary approval of the Settlement and its terms enumerated above, observing, that the Settlement appeared reasonable and disclosed no grounds to doubt its fairness.   Dkt. No. 120.   The Court preliminarily approved the fairness of the anticipated cost of notice. Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may

---

[1] Collectively referred to as the "Parties."

[2] Defined terms are intended to have their meaning in the Settlement Agreement.

award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement."  Fed. R. Civ. P. 23.  As noted by Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 120), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including a full-day mediation session before Hon. Judge Louis M. Meisinger (Ret.).  Friedman Decl ¶ 6.  The arm's length negotiations, especially those before Louis M. Meisinger (Ret.), serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $2,145,000 in attorneys' fees sought equates to 33% of the $6,500,000 Settlement Fund, which is slightly higher than the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common fund cases.  Additionally, Class Counsel have incurred a combined total of 1,493.9 hours litigating this action for a combined lodestar of $930,753.00.  Through this fee brief, which is unopposed by Defendant, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, which are capped at $194,499, to be paid to the Claims Administrator;[3] (2) attorneys' fees in the amount of $2,145,000; and (3) litigation costs in an amount of $25,046.52.  As more thoroughly stated herein and as detailed in the supporting declaration filed herewith, these sums are fair and reasonable as they resulted from extensive arm's length negotiations and are

---

[3] Plaintiff will supplement this filing at the final approval stage with a declaration from the claims administrator outlining actual administration costs.

1 further supported by the percentage-of-the-fund and loadstar methodologies.
2 Friedman Decl. ¶¶ 16-45.

3 **II.    STATEMENT OF FACTS**

4     **A.    Factual Background**

5     Nationstar is a servicer of home mortgages. Plaintiffs' operative Complaint
6 alleges that Nationstar violated The California Invasion of Privacy Act, Cal. Penal
7 Code § 630 et seq. ("IPA") during every outgoing call, by recording consumers'
8 communications without telling them they are doing so at the outset of the
9 conversation.   Plaintiffs contend they and the Class are entitled to statutory
10 damages pursuant to the IPA.  Defendant has vigorously denied and continue to
11 deny that it violated the IPA, and denies all charges of wrongdoing or liability
12 asserted against them in the Action.

13     **B.    Proceedings to Date**

14     Plaintiffs' Complaint was filed on October 23, 2015, alleging violations of
15 the IPA.   Plaintiffs' claims stemmed from recorded phone calls made by
16 Defendant that took place In October and November of 2014.   The Parties
17 engaged in written discovery.  Defendant produced all policies and procedures
18 relating to recording practices, advisory practices, training for representatives,
19 call scripts, and IVR automated messages, as well as all documents relating to
20 Plaintiff's collections file.

21     Plaintiffs moved to compel further production of documents comprising of
22 two categories: 1) the outbound dial list showing all recorded calls placed by
23 Defendants; and 2) recordings of California area code calls with Defendants
24 during the class period alleged in the Complaint.  Thereafter, both parties entered
25 into an agreement regarding discovery and Plaintiffs withdrew their Motion to
26 Compel. Plaintiffs filed for Certification on July 24, 2017.  During the pendency
27 of certification, the Parties attended mediation which was unsuccessful.
28 Thereafter, the Class was certified.

Defendants then sought an appeal under Rule 23(f), premised largely on *Maghen v. Quicken Loans Inc.*, 680 F. App'x 554 (9th Cir. 2017), which was denied by the Ninth Circuit.   Thereafter Plaintiffs filed a Motion for Approval of Class Notice Plan, which was also approved by the Court.

The Parties attended a second mediation with the Hon. Louis M. Meisinger, Ret. of Signature Resolution on April 27, 2018.   The Parties did not resolve the case at the mediation on April 27, 2018, but subsequently resolved the matter a few months later thereafter via Judge Meisienger.   Through his guidance, this Settlement was reached.   This Honorable Court granted Preliminary Approval on March 4, 2019.   Dkt. No. 120.

## III.   <u>ARGUMENT</u>

Class Counsel respectfully assert that (A) the requested fee award of $2,145,000 is fair, reasonable, and justified; (B) the payment of 25,046.52 in costs is fair and reasonable; and (C) the incentive award payments of $10,000 per Plaintiff is fair and reasonable.   Friedman Decl., ¶ 4.

### A.   <u>The Requested Fee Award Is Fair, Reasonable And Justified</u>

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h) (emphasis added).   As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is  'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003).   In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or, (2) lodestar plus a risk multiplier.  *Staton*, 327 F.3d at 967-68.  *See also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).   "Though courts have discretion to choose which calculation method they

use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel maintain the request for attorneys' fees is reasonable based solely upon the arm's length formal negotiations that serve as independent confirmation of the fairness of the settlement, including attorneys' fees.  *See Hanlon*, 150 F.3d at 1029.  However, the requested fees are also fully supported under the percentage-of-the-fund and lodestar approach, which Class Counsel offer as an additional and optional means of cross-checking the requested fees.

## 1.   The requested fees resulted from arm's length negotiations

While attorneys' fee provisions included in class action settlements are subject to the determination of whether the provision is fundamentally fair, adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)) (emphasis added).  *See also Lundell v. Dell, Inc*., CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class."  *Hanlon*, 150 F.3d at 1029.  *See also Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, at *5 (D.N.J.   Sept. 14, 2009) ("the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson*

---

*Emp. Mgmt., Inc*., 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co*., 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here and as previously stated in Plaintiffs; Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which this Court has approved (Dkt. No. 120), the Settlement Agreement resulted from extensive arm's length negotiations.   Friedman Decl. ¶¶ 6.   More specifically, the Parties attended a full-day mediation session with the Hon. Louis M. Meisinger (Ret.), where the parties were able to agree on the terms of a settlement agreement.   *Id.* The parties had also conducted extensive informal and formal discovery surrounding Plaintiff's claims and Defendant's defenses.   Friedman Decl., ¶¶ 6 and 21-23.   Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees. However, the requested fee is wholly supported by the both the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

## 2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002).   The

"benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048; *See also Raffin v. Medicredit, Inc.*, Case No. CV 15-4912-MWF 2018 WL 6011551 (C.D. Cal. May 11, 2018) (preliminarily approving fees in an IPA class action settlement of 1/3 of the common fund, and later awarding fees at final approval – Dkt. No. 205).

Class Counsel's request for attorneys' fees in the amount of $2,145,000 equates to 33% of the $6,500,000 Settlement Fund (Agr. § 6), which falls slightly above the Ninth Circuit's benchmark. In most cases, the benchmark 25% in attorneys' fees are most often paid from the fund, thereby reducing class members' recovery, as is this case. Here, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

        a.    **Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046. *See also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for

class members") (citing Fed. R. Civ. P. 23(h) committee note).   Standing alone, this factor supports Class Counsel's fee request.

The settlement secured by Plaintiff and Class Counsel provides an excellent recovery for Class Members as compared to similar IPA cases, despite the uncertainty of recovery in IPA class actions.   The Settlement Agreement provides for $6,500,000 in recovery for the Class.   SA § 4.   Every Class Member who submits a Valid Claim Form will be entitled to a pro rata distribution of the Settlement Fund.   SA § 15.3.   As of June 27, 2019, there are approximately 10,819 Class Members who have submitted Valid Claims.   Azari Decl. ¶ 27.   This translates to an approximate take rate of 17%.   Assuming the take rate does not change due to late notices that are accepted as valid regardless of late status (typical in cases of this nature), this would translate to approximately $380.39 per Class Member who submitted a Valid Claim Form.   This figure was based on a class size of 62,479, with 10,380.39 claims, an assumption that class notice would cost $194,499, that fees would be $2,145,000, that an incentive awards would be $20,000, and that costs of litigation would be $25,046.52.

The settlement amount to class members is greater than numerous similar IPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular.   Below is a chart of four recent similar CIPA class action settlements which have received approval, including the value to each proposed class member for the respective case.   Notably, the case at bar exceeds the result achieved in any of these other matters.

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Zaw v. Nelnet Business Solutions Inc.*, No. 3:13-cv-5788-RS (N.D. Cal.) | 104,122 | $1.8 Million | $11 per class member |
| *Mirkarimi v.* | 150,000 | $14.5 Million | $96.67 per class |

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Nevada Property 1, LLC DBA The Cosmopolitan Hotel of Las Vegas*, No. 12-cv-2160 (S.D. Cal.) | | | member |
| *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-2359 (S.D. Cal.) | 82,000 | $11.7 Million | $143.19 per class member |
| *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS (C.D. Cal. | | Claims Made Reversionary settlement $100 gift card per claim | $100 per class member claim made |

Reviewing these cases puts the current settlement into context. The class members who made claims are going to be more than the class members in these previously-settled cases received. That is solely because of the efforts of undersigned counsel's office, in fighting for almost four years of tough litigation, and the willingness to advance over $25,000 in out of pocket expenses for the sake of protecting the Class.

The case at bar was resolved for a sum that represents an outstanding result for the Class Members. This fact strongly supports the fees requested by Plaintiff.

b. <strong>The risks of litigation support the requested fees</strong>

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47. *See also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Throughout litigation and both mediations, Defendant raised several defenses. While both sides strongly believed in the merits of their

---

respective cases, there are risks to both sides in continuing the Litigation. See Friedman Decl, ¶¶ 16-22. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.

In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have. As a result, Class Counsel supports the Settlement and seeks its Approval. *Id*. The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the IPA. Furthermore, Judge Meisinger, who is intimately familiar with the instant litigation as well as the current climate of IPA litigation as a whole, agrees with the parties. The Honorable Court agreed with this reasoning in preliminarily approving the settlement.

Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c.   The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous IPA and related consumer class actions. Class Counsel have successfully prosecuted numerous complex consumer class actions, and have secured noteworthy recoveries for those classes. Class Counsel's proven track record demonstrates not only the quality of

---

work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery including the production of thousands of documents and voluminous data from Defendant and, engaged in protracted motion practice, and engaged in additional mediation discovery. Counsel certified the class, and battled over the past three-plus years of litigation, hired experts at considerable expense, numerous recordings, thousands of pages of documents, took and defended numerous depositions. Nobody could say that this case was not fully investigated, or thoroughly and vigorously litigated. Class Counsel participated in extensive formal and informal discovery, and two full-day mediations session where they vigorously negotiated and ultimately secured a highly favorable settlement for the benefit of Class Members. *Id*. Indeed, this particular case involved litigation on novel areas of the law, which were evolving throughout litigation, and which were first developed and litigated by Class Counsel. The uncovering of the claims themselves came about only through Class Counsel's diligence, and certification of the claims was achieved only through complex litigation efforts involving novel certification and merits theories that were unlikely to have been developed by another law firm, given the nature of the claims. Thus, the level of expertise and effort required to achieve this result was greater than in many other class actions. Thus, Class Counsels' skill and expertise, reflected in the prompt and significant Settlement, supports the requested fees.

### d. Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re*

---

*Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. *See* Friedman Decl., ¶¶ 16-26. In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting extensive discovery on Defendant; (3) obtaining class certification via contested motion; (4) negotiating the Settlement in two private mediations, and the weeks following mediation; (5) Class counsel will also be required to oversee administration of the Settlement; and, (6) respond to Class Member inquiries. Class Counsel expended these resources despite the risk that Class Counsel may never be compensated especially in light of the fluctuating interpretations of the IPA and the difficulty in securing class certification.

Class Counsel here incurred 25,046.52 in costs and spent 1,493.9 hours litigating this action. Friedman Decl., ¶¶ 28-44 and Ex. A. There were no guarantees of victory, and there were numerous potentially disastrous issues raised by Defendant. Two small law firms with a handful of attorneys took on this litigation alone, put thousands of hours of time, and over $25,000 in costs into this case and fought tooth and nail to protect the Class that they represented when they were granted Class Counsel status. This type of circumstance is why lodestar multipliers are awarded by courts.

Thus, Class Counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047. As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and is commensurate with the excellent results obtained for the Class and is comparable or in excess of settlements in other IPA cases, as discussed *supra*.

While the requested fees are fully supported by the percentage-of-the-fund method, it should again be noted that the application of the percentage-of-the-fund method is optional and may be applied at the Court's discretion. In addition, the Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

### 3.     The requested fee is reasonable, fair, and justified under the lodestar method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. However, a cross-check is optional. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check"). If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 33% fee award of $1,650,000 is reasonable.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results

---

obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975).

a.     **Class Counsels' lodestar is reasonable**

The accompanying declaration of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. Plaintiff's attorneys' work is summarized as follows:

| NAME | HRS. | RATE | TOTAL |
|---|---|---|---|
| Todd M. Friedman | 348.9 | $725.00 | $252,952.50 |
| Adrian R. Bacon | 873.4 | $625.00 | $545,875.00 |
| Thomas E. Wheeler | 52.7 | $370.00 | $22,397.50 |
| Meghan George | 10.9 | $575.00 | $6,267.50 |
| Yoel Hanohov | 14.1 | $175 | $2,467.50 |
| Mordechai Wolowitsch | 15.5 | $175 | $2,712.50 |
| Simon Liang | 5.5 | $175 | $962.50 |
| Erika Campany | 7.3 | $260 | $1,898.00 |
| Asaf Agazanof (cocounsel) | 165.6 | $575.00 | $95,220.00 |
| **TOTAL** | **1,493.9** | | **$930,753.00** |

Friedman Decl. Ex A.  As described in the accompanying declarations, Plaintiff's attorneys have devoted a total of 1,493.9 hours to this litigation to date, and have a total lodestar to date of $930,753.00, which represents approximately a 2.3 multiplier. *See* Friedman Decl. ¶¶ 27-46.

A reasonable multiplier is appropriate in this action, which has been subject to litigation for four years, was certified by Class Counsel by contested motion, survived an attempt to appeal, involved a novel legal issue from both certification and merits perspectives and where Class Counsel assisted Plaintiffs in uncovering and developing the facts and theories underlying the action.  There can be no doubt

---

that the case involved high levels of risk, and high investment of resources, both of which were borne by Class Counsel.   The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862, at *16 (N.D. Cal. 2007).   It is for this reason that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *Lisa Kim v. Tinder, Inc., et al*., Case No. CV 18-3093-JFW(ASx), 2019 WL 2576367 at *13 (C.D. Cal June 19, 2019); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier); *Coalition for L.C. County Planning etc. Interest v. Board of Supervisors* (1977) 76 Cal.App.3d 241, 251; *Arenson v. Board of Trade of City of Chicago* (N.D. Ill. 1974) 372 F.Supp. 1349.) *cf Wershba v. Apple Computer, Inc*. 91 Cal.App.4th 224.   The multiplier in this action falls squarely within the range of reasonableness under established Ninth Circuit precedent, and moreover, is well deserved given the lengths Class Counsel went to in order to secure the outstanding result in this case.   No Class Members have objected to the request to date.

Thus, Class Counsel's lodestar, and the multiplier requested are reasonable. Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case.   In this regard, tasks were reasonably divided among attorneys to ensure avoiding the replication of work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary.   The reality is that the complexity of this

matter was high, and required senior attorneys to handle to majority of tasks.  In addition, Class Counsels' contemporaneous time records were carefully reviewed.  Friedman Decl., ¶ 30-44, Ex A.

b.  **Class Counsels' hourly rates are reasonable**

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here. *See* Friedman Decl., ¶¶ 8-15.  Mr. Friedman and Mr. Bacon are also very experienced in litigating IPA cases, including class actions, and serve as class counsel in multiple certified IPS class actions. *Id.*

According to the well-respected Laffey Matrix, reasonable rates for a Partner of a law firm practicing 11-19 years are calculated at $742 per hour.  Friedman Decl. Exs. A and B.  Mr. Friedman has dedicated his career to consumer protection litigation, including class action litigation under the IPA, TCPA, FDCPA, EFTA, FCRA, and other consumer protection statutes.  He has secured eight figure class-wide settlements on behalf of millions of consumers nationwide.  Thus, the billing rate for Mr. Friedman of $725 per hour is well within the normal range of fees charged by firms in Southern California for partner work.[4]

---

[4] See *Hartless v. Clorox Co*., 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008)

---

Additionally, Adrian R Bacon, who has contributed much to this litigation, has significant experience in litigating consumer class actions, including IPA class actions, which justifies his hourly rate of $625. Friedman Decl. ¶¶ 32-57.  Mr. Bacon is a Partner at The Law Offices of Todd M. Friedman, P.C., and has numerously been approved at the rate of $625.  Along with Todd Friedman, Mr. Bacon is the primary managing attorney who oversees litigation efforts in the majority of class action litigation at The Law Offices of Todd Friedman.  Such efforts included the drafting of class certification motions in numerous federal consumer class actions which were certified by contested motion under Rule 23.  According to the same Laffey Matrix, reasonable rates for a partner are calculated at $658 per hour.  Thus, the billing rate for Adrian R. Bacon is well within the normal range of fees charged by firms in Southern California.  Hence, Class Counsels' combined lodestar of $930,753.00 is reasonable and supports the requested fees.

## B.   The Requested Costs Are Fair And Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).  Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are

---

(finding partner rates of $750 to $475 and associate rates of $425 to $275 reasonable).

---

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $25,046.52.  *See* Friedman Decl., ¶¶ 28-30.  These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.  Here, the Class Notice informed Class Members that Class Counsel would seek an award of costs up to $100,000 and the Settlement Agreement authorizes a petition of costs for up to $100,000. SA § 6.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, the request for costs of $25,046.52 is reasonable.  Class Counsel will likely incur additional costs as this case moves to the final approval stage, which final approval hearing is set for August 19, 2019.

## IV.   CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $10,000 to be distributed to each Class Representative, subject to Court approval.  Nationstar has agreed not to oppose the request as long as it is not greater than $10,000 for each representative.  Agreement § 7.

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-*67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this district, a $5,000 payment is presumptively reasonable.  *See also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-*43 (9th Cir. Feb. 27, 2015) – finding that the District court did not abuse its discretion in approving settlement class in  antitrust class action,  despite objector's contention  that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive.  *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*,  295 F.R.D. 438, 472 (C.D. Cal. Jan. 17,

2014) – finding that Request for recovery of $5,000 incentive award for each named plaintiff in consumers' action against children's toy retailer alleging retailer violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more than the last four digits of consumers' credit card numbers on customer receipts, was reasonable; parties' settlement agreement provided for incentive payments of $5,000 to each named plaintiff, those awards were consistent with the amount courts typically awarded as incentive payments.  Incentive awards of $15,000-$20,000 have been found to be reasonable. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011); *Raffin v. Medicredit, Inc*., Case No. CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11, 2018) (preliminarily approving a $15,000 incentive award, and later granting the award at final approval).

Here, Plaintiffs assisted in the three plus years of litigation by sitting for a deposition and participating in two mediations, providing documents and information to counsel, participating in the motions and settlement discussions, and reviewing and approving the settlement on behalf of the Class.  Plaintiffs acted dutifully in their roles as a class representative, and should be awarded this reasonable sum of $10,000 each, for their part in the litigation.

## IV.  **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees in the total amount of $2,145,000 (33% of the Settlement Fund), litigation costs of $25,046.52; and a Class Representative Incentive Awards of $10,000 per Plaintiff.

Date: June 27, 2019                    Respectfully submitted,

**Law Offices of Todd M. Friedman, P.C.**

By:/s/ Todd M. Friedman
   Todd M. Friedman, Esq.
   Adrian R. Bacon, Esq.
   *Attorneys for Plaintiff*

---

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

## CERTIFICATE OF SERVICE

Filed electronically on this 27th day of June, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 27th day of June, 2019, to:

Honorable Judge Christina A. Snyder
United States District Court
Central District of California

All Counsel of Record on the ECF

s/Todd M. Friedman
        Todd M. Friedman, Esq.